## A03A1481. DOSS v. THE STATE.
### (590 SE2d 208)

MIKELL, Judge.

A Forsyth County jury convicted David Emory Doss of aggravated child molestation and cruelty to children.[1] On appeal, Doss argues that the trial court committed three errors: (1) it allowed a witness to testify concerning similar transactions; (2) it excluded the testimony of two of the appellant's character witnesses; and (3) it refused to dismiss for cause a juror who had been molested. Doss also asserts that his trial counsel was ineffective. Finding no error, we affirm.

"On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence."[2] So construed, the evi-

---

[1] Doss's conviction resulted from the second trial of this matter. The first trial resulted in a hung jury, and the court declared a mistrial.

[2] (Citation omitted.) *Hutchinson v. State*, 232 Ga. App. 368, 369 (501 SE2d 873) (1998).

dence shows that while en route to his paternal grandparents' house to spend the weekend with them, C. K., the victim, who was three years old at the time, told his grandmother, Joanne Kutas, that he was scared of Doss because Doss makes him "suck on his private thing." Doss is C. K.'s maternal stepgrandfather. Joanne told her husband, Robert Kutas, and they decided to wait until Sunday to tell C. K.'s mother, Donna Peele.

Robert told Peele, who said that C. K. had told her about the incidents but that she did not believe him. Nonetheless, Peele told Robert that she would look into it and contact them. When she did not, Joanne told C. K.'s father, Kevin Kutas. Kevin testified that he immediately reported the incident to the Forsyth County Sheriff's Department.

Sergeant Sarah Shinall, who investigated crimes against children and sex crimes, was assigned to the case. Shinall testified that she interviewed C. K. and his mother on December 6, 1996; that Peele told her that on several occasions C. K. told Peele that Doss made him play with his private parts and that she told C. K. that he was just dreaming; and that Peele also reported that C. K. told her that it did not really happen. When Shinall tried to interview C. K., Peele's mother, Donna Doss, who was also present, became extremely irate and told Shinall that C. K. was lying. In C. K.'s presence, Donna screamed and cursed at Shinall and attempted to grab Shinall's private area while yelling that C. K. regularly tried to grab her husband's private area. Shinall told Donna that she was going to have to leave the building and explained that she had to interview C. K.

Using an anatomical drawing of a little boy, Shinall asked C. K. to identify each body part, and when she asked about the private part on the drawing, C. K. said, "I can't talk about Poppa and nasty stuff. I'll get a spanking." Shinall then asked Peele to take C. K. to Dr. Nancy Aldridge for a forensic evaluation. Shinall also asked Peele to keep C. K. away from Doss while the investigation took place. Peele agreed and called Kevin, who picked up C. K. from the police station. C. K. remained in Kevin's custody until September 1997.

Dr. Aldridge, a licensed clinical social worker and psychotherapist, conducted a videotaped forensic interview of C. K., which was played for the jury. Dr. Aldridge testified that C. K. told her that Doss made him do "nasty things," including sucking Doss's penis. Dr. Aldridge treated C. K. until March 1998, seeing him approximately 23 times. She opined that he exhibited behavioral indicators of sexual abuse, including nightmares consistent with being assaulted at night, a preoccupation with everyone wearing underwear, and advanced sexual knowledge. Dr. Aldridge testified that children who report sexual abuse and are disbelieved often recant their stories; however, C. K. never recanted his story to her.

1. In his first error, Doss argues that the trial court should not have allowed Richard Doss, the appellant's son, to testify concerning similar transactions because the state gave Doss less than the ten days notice of its intention to present the evidence required by Uniform Superior Court Rule 31.1. Doss failed to assert this argument below, and therefore, waived this issue on appeal.[3]

2. Doss next argues that his trial counsel's failure to assert the argument below constituted ineffective assistance. However, this argument was not raised during the hearing on Doss's motion for new trial. Instead, counsel argued four other grounds of ineffectiveness. In a similar case where the defendant raised his ineffectiveness claim on motion for new trial but failed to raise the specific ground asserted later on appeal, we held as follows: "It is well settled that the arguments underlying a claim for ineffective assistance of counsel must be raised before appeal at the first opportunity, usually on motion for new trial, and the failure to seize that opportunity is a procedural bar to raising that issue at a later time."[4] Accordingly, this error fails as well.

3. In his next enumerated error, Doss argues that the trial court should have permitted the testimony of two character witnesses, David Spain and John Yearwood, both of whom testified at the first trial. The record shows, however, that the trial court did not bar these witnesses from testifying.

Relying on *Haralson v. State*[5] and *Bush v. State*,[6] the state moved in limine to exclude the testimony of these witnesses on the ground that both men testified in the first trial that their experience with Doss was limited to exposure to him in a business context and that such testimony could not serve as evidence of Doss's good character in the community. Citing *Bush*, we held in *Haralson* that "[r]estricting counsel from asking a witness about an individual's reputation at business and among the employees is not error, as this is not the correct test."[7] Following this precedent, the trial court granted the motion in limine, stating:

> That doesn't mean these witnesses can't attempt to testify. I mean, you might be able to lay a better foundation. . . . So while it may be that these persons just happened to be

[3] *Mayo v. State*, 261 Ga. App. 314, 317-318 (4) (582 SE2d 482) (2003); *Aalon v. State*, 247 Ga. App. 37, 40 (3) (543 SE2d 78) (2000); *Jones v. State*, 272 Ga. 884, 887 (4) (536 SE2d 511) (2000).

[4] (Citation and punctuation omitted.) *Scieszka v. State*, 259 Ga. App. 486, 488 (2) (578 SE2d 149) (2003).

[5] 223 Ga. App. 787 (479 SE2d 115) (1996).

[6] 149 Ga. App. 448 (254 SE2d 453) (1979).

[7] (Citations and punctuation omitted.) *Haralson*, supra at 792 (5).

employed in the same occupation and just happen to work with him, they may be able to testify about his reputation in the community in which he lives, or which he lived at some point, but they may not be. . . . So it's going to have to be reputation in the community in which he lives or in which he lived.

As in *Bush*, the trial court in this case did not prevent counsel from laying a proper foundation for good character evidence.[8] Therefore, no error occurred.

4. In his fourth enumeration of error, Doss argues that the trial court erred in not dismissing for cause a juror who had been sexually molested. When asked the statutory questions required by OCGA § 15-12-164 (a), the juror did not indicate any bias, prejudice, or partiality. Nothing disqualifying was elicited from this juror during individual voir dire. During sequestered, individual voir dire, it was revealed that she had been sexually molested twice as a child. Below is the entire colloquy between the juror, the court, the prosecutor, and the defense attorney concerning the juror's molestations as a child.

THE COURT: Please have a seat in the jury box there. All right. Now a question was asked about your prior experience with someone who had been sexually molested and just tell us about it.

[JUROR][9]: It was myself as a child; two times. I was pre-school and it's just — It's become a vague memory, but I was touched in a very — in my vagina. And I just felt that this has always been at the back of my mind. I have prejudices towards men who would do that kind of thing. So I don't know what to say, but that — I felt I had to let you know that.

THE COURT: Do you feel that that experience that you had as a — Do you feel that that experience that you had as a child would inhibit your ability to listen to the evidence and apply the evidence to the law and render a fair and impartial verdict in this case?

[JUROR]: It might not. I don't know. I don't know. I don't know how to answer that. It may. It may trigger something; I don't know. But I do mostly try to rationalize and be fair, but I don't know. I can't answer you there.

---

[8] *Bush,* supra at 449 (4).

[9] The juror's name appears in the transcript, but to protect her privacy we have referred to her as "JUROR."

THE COURT: Ms. Penn, did you — Mr. Ballinger, did ya'll wish to follow-up further?

MS. PENN: You said it happened two times?

[JUROR]: Two different people. Two different men.

MS. PENN: Right.

[JUROR]: One was a very old man. You're bouncing your ball and skipping along. I mean, you know, it's just a wild sort of thing. And the other was a family friend.

MS. PENN: I don't have anything else. Thank you.

THE COURT: Mr. Ballinger?

MR. BALLINGER: At each one of these two incidences — On these two incidences, how long after they occurred, was it after that, that's when you reported it?

[JUROR]: How long what?

MR. BALLINGER: I mean, did you report this shortly after — ?

[JUROR]: To my mother.

MR. BALLINGER: To your mother? And — .

[JUROR]: She would not allow — A little old Italian lady. She would not allow my father to know this, because she though [sic] he would kill them.

MR. BALLINGER: And were the perpetrators ever — ?

[JUROR]: Nothing was ever — .

MR. BALLINGER: — prosecuted?

[JUROR]: Nothing. Nothing. Nothing was ever, ever done.

MR. BALLINGER: Thank you.

THE COURT: Any other questions?

MS. PENN: Not from the State, Judge.

MR. BALLINGER: I don't have any other questions, Your Honor. We'll challenge for cause.

THE COURT: Oh, you are making a motion, then?

MR. BALLINGER: Yes.

THE COURT: . . . [I]t's very important that you try to think about this question that I'm going to ask you. I know you're doing the best that you can and these are difficult things that we're talking about here, but, you know, we can't ask you to come in and be a juror and forget all of your life experiences because you can't do that. They're there and you're going to remember those life experiences even though you're asked to wipe the slate clean. But we have to ask you if you're going to be a juror, to be able to listen to the evidence and listen to the Court's charge on what the law is in this case and apply the law to that evidence. And to be able to render a verdict without — be able to render a verdict based solely on the evidence in this case without having your abil-

ity to render that verdict influenced by your past experiences. You know, sometimes that can't be done. Sometimes past experiences are so ingrained in you that it would just make it impossible for you to base your verdict solely on the evidence in this case. But if you think you can do that and put aside your past experiences and listen to the evidence and base your verdict solely on the evidence in this case, then you would be qualified. Otherwise, you would not. What do you think that you could do in this case?

[JUROR]: Uh — .

THE COURT: Understand that your role as a juror is only to determine the guilt or innocence; not punishment. Your role as a juror is to determine guilt or innocence.

[JUROR]: I think I could do it.

THE COURT: All right. Any further questions you want to ask?

MR. BALLINGER: No.

THE COURT: Your motion is denied.

It is well settled that the decision to grant or deny a motion to strike a juror for cause is directed to the sound discretion of the trial judge.[10] However, in the two and a half years since our seminal decision in *Walls v. Kim*,[11] this court and the Supreme Court, have issued a number of decisions to guide the trial courts in exercising their discretion. The new rules are not illogical and can be reconciled with one another. They seem to be the following:

(a) When some hint of juror bias or partiality appears, it is an abuse of discretion to cut off inquiry and rely on an affirmative answer to a rehabilitative question from the bench as a talisman to show that the juror has magically, suddenly become unbiased and impartial.[12]

(b) On the other hand, there is no per se rule disqualifying a class of persons from jury duty based, for example, on employment relationships or doctor-patient relationships.[13] Jurors are presumed to be impartial. And trial courts continue to have "extremely broad discretion . . . *once an adequate inquiry has been conducted*."[14]

(c) In conducting the adequate inquiry mandated by *Walls v. Kim* and *Kim v. Walls*, it is completely improper for counsel, and espe-

---

[10] *Garland v. State*, 263 Ga. 495, 496 (1) (435 SE2d 431) (1993).

[11] 250 Ga. App. 259 (549 SE2d 797) (2001).

[12] Id. at 260-261. Accord *Cannon v. State*, 250 Ga. App. 777, 780 (552 SE2d 922) (2001).

[13] But see *Hutcheson v. State*, 246 Ga. 13, 14 (268 SE2d 643) (1980) (police officers per se disqualified in criminal trials).

[14] (Citation omitted; emphasis supplied.) *Kim v. Walls*, 275 Ga. 177, 179 (563 SE2d 847) (2002).

cially for the trial court, to browbeat the juror into affirmative answers to rehabilitative questions by using multiple, leading questions.[15]

(d) "[L]engthy and repeated questioning . . . about laying aside . . . bias and deciding the case based solely on the evidence [can become] more an instruction on the desired answer than a neutral attempt to determine the juror's impartiality."[16]

(e) During the adequate (but not lengthy or repeated) questioning required by *Walls v. Kim* and *Kim v. Walls*, a trial court is allowed by Supreme Court precedent to ask questions of jurors " 'which might lead to their rehabilitation.' "[17]

(f) Nothing in *Walls v. Kim*, or its progeny, changed the traditional Georgia rules that a prospective juror's doubt about his or her impartiality does not demand as a matter of law that he or she be excused for cause.[18] Nor is excusal required when a potential juror expresses reservations about his or her ability to put aside personal experiences.[19] And in *Garland*[20] the trial court did not abuse its discretion in refusing to excuse a prospective juror who stated that she would "try" to put aside her emotions and consider the case based upon the evidence.[21]

How do the above six rules apply to the case at bar? As mentioned in *Kim v. Walls*, there is no per se rule excluding for cause a class or category of persons (except sworn law enforcement officers). Therefore there is no per se rule excluding victims of crime, even if the crime charged in the indictment is the same crime of which the potential juror was a victim. The trial court's decision on the motion to strike must be based on the "record as a whole."[22] Part of that record is the statutory voir dire question, which revealed no bias or partiality on the part of the challenged juror. Moreover, the trial judge observed the demeanor of the juror during individual voir dire and sequestered voir dire.

During the sequestered voir dire, which seems to have been handled with concern and sensitivity by the trial judge and by counsel, the lady stated, "I have prejudices towards men who would do that kind of thing." She stated that she would "try" to be fair, but worried

---

[15] *Ivey v. State*, 258 Ga. App. 587, 592 (574 SE2d 663) (2002).

[16] (Punctuation and footnote omitted.) Id., quoting *Cannon*, supra at 780. See also *Walker v. State*, 262 Ga. 694, 695-696 (2) (424 SE2d 782) (1993).

[17] *Kim v. Walls*, supra at 180 (Carley, J., concurring and quoting *Beasley v. State*, 269 Ga. 620, 625-626 (14) (502 SE2d 235) (1998)).

[18] *Waldrip v. State*, 267 Ga. 739, 745 (8) (c) (482 SE2d 299) (1997).

[19] *Johnson v. State*, 262 Ga. 652, 653 (2) (424 SE2d 271) (1993).

[20] Supra at 495-496 (1).

[21] See generally *Holmes v. State*, 269 Ga. 124, 125 (2) (498 SE2d 732) (1998).

[22] *Cannon*, supra at 778 (1), citing *Brown v. State*, 246 Ga. App. 60, 65 (2) (539 SE2d 545) (2000).

that "[i]t may trigger something; I don't know." The trial judge asked one rehabilitative question, which was as close to being nonleading as most lawyers can come. The juror responded, "I think I could do it."

The trial court did not cut off voir dire by counsel, but allowed as much as they desired. His questions were not coercive and were far different in tone than were the questions, for example, in *Ivey v. State*.[23] The juror's tentative answers were similar to answers approved by numerous appellate decisions.[24] We cannot find in this instance that the trial court abused its discretion without holding (contrary to *Beasley*[25]) that a trial judge may ask no questions or holding that a juror's answers must be unequivocal. Either holding would mistakenly place upon us the job of deciding subjective issues upon a cold, written record instead of keeping the responsibility for ensuring the selection of an impartial juror on the trial judge, who is in a position to observe the demeanor of the witness and to control the voir dire.

Three recent decisions of our court are controlling. *Moreland v. State*,[26] written by our Chief Judge, while reiterating that coercive rehabilitation would have been improper, noted that denying the motion to strike was not an abuse of discretion when the juror "did not know any of the parties to the case, had no personal knowledge of the facts, and did not indicate anything other than a general dislike of a particular type of act."[27] In *Moreland* the juror testified more positively than did the challenged juror in the case at bar that he could set his feelings aside. But, as mentioned above, subjectively evaluating equivocal answers is the job of the presiding judge.

In *Pitts v. State*[28] two jurors had expressed strong feelings against illegal drugs and doubts that they could fairly judge a drug case. Our court distinguished *Kim v. Walls* and held that the trial court had not abused its discretion.

In *Thomas v. State*[29] two jurors said they were not impartial between the state and the defense because of "prior life experiences with violence."[30] Our court explained that there is a

> legal difference between (a) a potential juror who, because of life experiences, expresses doubt that he or she can be

---

[23] Supra at 591-592 (2).
[24] E.g., *Holmes,* supra at 125 (" 'I would hope I could' " and " 'I can try' ").
[25] Supra at 625-626 (14).
[26] 263 Ga. App. 585 (588 SE2d 785) (2003).
[27] Id. at 587 (1).
[28] 260 Ga. App. 553, 558 (5) (580 SE2d 618) (2003).
[29] 257 Ga. App. 350 (571 SE2d 178) (2002).
[30] Id. at 351 (2).

impartial *if evidence* triggers those experiences, and (b) a juror who, because of life experiences, cannot listen to the evidence before forming a judgment. While the former category may or may not merit a peremptory strike, the latter category does merit a strike for cause.[31]

In the case at bar the challenged juror worried that her having been a victim of child molestation "might trigger something." She had neither formed nor expressed any opinion in regard to the guilt or innocence of the accused. She was, according to her answers to the statutory questions, impartial at the beginning of the trial. The life experiences of any juror may trigger a response to evidence presented during a trial. We ask jurors to be impartial at the beginning of a trial, not at the end after hearing the evidence. The trial judge ruled that this juror was impartial between the state and this particular defendant at the beginning of the trial. That ruling was well within his discretion.

But, a ruling granting the motion to strike would also have been within the trial court's discretion. Granting the motion would have been the better practice, especially when the potential juror is a victim of the same crime for which the accused is on trial. Removing a potential juror in these circumstances avoids a ground for appeal, and the concomitant risk of having twice to try a case which is sensitive and embarrassing for the witnesses. And granting the motion would also avoid putting the juror into a possibly embarrassing and uncomfortable position.

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED NOVEMBER 18, 2003.

*Jennifer D. Patterson,* for appellant.
*Penny A. Penn, District Attorney,* for appellee.

---

[31] (Footnotes omitted; emphasis in original.) Id., citing *Holmes,* supra at 126 (2).