A04A0327. REMILLARD et al. v. LONGSTREET CLINIC, P.C.
(599 SE2d 198)

RUFFIN, Presiding Judge.

Misty and Sonny Remillard sued The Longstreet Clinic, P.C. ("Longstreet"), Northeast Georgia OB-GYN Associates, and Dr. Zack

---

Dillard for medical malpractice following the death of their infant son during childbirth. The Remillards apparently dismissed their claims against Dr. Dillard and Northeast Georgia OB-GYN, and the case proceeded to trial against Longstreet, the clinic that employed Dr. Dillard. The jury found in favor of Longstreet. The Remillards appeal, arguing that the trial court erred in refusing to strike several potential jurors for cause. Finding no error, we affirm.

In civil cases, a party may challenge for cause any potential juror that "has expressed an opinion as to which party ought to prevail or . . . a wish or desire as to which [party] shall succeed."[1] Once a party makes such a challenge, the trial court must conduct an inquiry, examine the evidence produced through the inquiry, and resolve the challenge.[2] The trial court may not excuse a juror for cause unless "the juror's opinion is so fixed and definite that it would not be changed by evidence or charge of the court upon the trial of the case."[3]

Jurors, however, must be free from bias and prejudice regarding the trial's outcome.[4] And as recently established by our Supreme Court, a trial court cannot "rehabilitate" a biased juror simply by asking a "talismanic question," such as whether the juror can set aside his personal feelings and decide the case based solely on the evidence and the law.[5] In other words, a court may not "cut off inquiry and rely on an affirmative answer to a rehabilitative question from the bench as a talisman to show that the juror has magically, suddenly become unbiased and impartial."[6] Nor may counsel or the trial court "browbeat the juror into affirmative answers to rehabilitative questions by using multiple, leading questions."[7] The court instead must conduct an inquiry, either through its own questioning or allowance of questions by counsel, sufficient to evaluate the potential juror's fairness and impartiality.[8] A trial court has broad discretion in making this evaluation, and we will not reverse its ruling absent a manifest abuse of discretion.[9]

---

[1] OCGA § 15-12-134.

[2] See id.; *Kim v. Walls*, 275 Ga. 177, 178 (563 SE2d 847) (2002).

[3] (Punctuation omitted.) *Gragg v. Neurological Assoc.*, 176 Ga. App. 516, 518 (336 SE2d 608) (1985). See also *Clark v. State*, 265 Ga. App. 112 (593 SE2d 28) (2004) ("For a juror to be excused for cause, it must be shown that he or she holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence and the court's charge upon the evidence." Although *Clark* is a criminal case, no different standard applies in a civil case.).

[4] See *Kim*, supra.

[5] See id. at 177-178; see also *Powell v. Amin*, 256 Ga. App. 757, 758 (1) (569 SE2d 582) (2002).

[6] *Doss v. State*, 264 Ga. App. 205, 210 (4) (a) (590 SE2d 208) (2003).

[7] Id. at 210-211 (4) (c).

[8] See *Kim*, supra at 178-179.

[9] See id. at 178.

1. On appeal, the Remillards claim that the trial court should have excused for cause six jurors because either they or their family members have continuing patient relationships with doctors at Longstreet. We disagree.

Each of the six jurors testified during voir dire that their relationships with Longstreet would not affect their ability to render a fair verdict in the case. Nevertheless, the Remillards' counsel moved to strike this group of jurors. Counsel acknowledged that these jurors expressed no bias, but argued that they should not be put in the position of rendering a verdict for the plaintiffs that "would make it impossible [for them] to continue with [their] healthcare provider." The trial court denied the motion.

In *Cohen v. Baxter*,[10] our Supreme Court rejected the notion that, in medical malpractice cases, trial courts should automatically dismiss for cause potential jurors that have an ongoing doctor-patient relationship with a defendant. Instead, the trial judge must determine whether such relationship actually creates prejudice or bias requiring a juror's dismissal.[11] Furthermore, as noted by *Cohen*, "[t]he law presumes that potential jurors are impartial."[12] Given the assertion by each of these jurors that their relationships with Longstreet would not impact their decision in this case, we cannot find any error in the trial court's refusal to excuse them for cause.[13]

The Alabama case law relied upon by the Remillards does not persuade us otherwise. In Alabama, "a doctor-patient relationship between a potential juror and a party to a lawsuit is prima facie evidence of probable prejudice on the part of the potential juror."[14] Once presented with a prima facie case of prejudice, an Alabama trial court must determine " 'whether the juror can set aside her opinions and try the case fairly and impartially, according to the law and the evidence.' "[15]

The Remillards urge us to adopt a similar "presumption of prejudice." Such presumption, however, conflicts with *Cohen*'s statement that all potential jurors — including those in doctor-patient relationships with a party — are presumed impartial. Furthermore, even if we applied the Alabama presumption here, the facts in this case would not require dismissal of these jurors. As noted above, each stated that their relationships with Longstreet would not affect their judgment, authorizing the trial court to find them impartial.

---

[10] 267 Ga. 422, 423-424 (1) (479 SE2d 746) (1997).
[11] See id.
[12] Id. at 424 (2).
[13] See id.
[14] *Bell v. Vanlandingham*, 633 S2d 454, 455 (Ala. 1994).
[15] Id.

2. The Remillards also argue that two jurors, Kathy Stroberg and Ivan Smith, should have been dismissed from the jury because they specifically expressed bias or an inability to sit in judgment. In a related argument, the Remillards claim that the trial court improperly rehabilitated Stroberg.[16]

(a) *Kathy Stroberg.* During voir dire, Stroberg stated that her children are patients in Longstreet's pediatric clinic. When asked by the Remillards' counsel whether this fact would affect her judgment in the case, Stroberg responded: "I don't know. . . . [M]y children go to the doctors group and I just feel very funny about lawsuits against doctors." She also stated that she would have "difficulty sitting in judgment" in the case. Stroberg explained: "[W]hen you live in a small town like this, or it was much smaller when we were coming through with having babies and stuff, . . . it's hard to sue a doctor if you still want to use them."[17] Nevertheless, she noted that she no longer used Longstreet's obstetrics services. And she stated that patients sometimes need to sue doctors. She further indicated that she "probably could" set aside her feelings and find in favor of the Remillards if the facts and law supported such a verdict.

Following counsel's questions, the trial court conducted its own inquiry into Stroberg's potential bias. In response, she indicated that she would be willing to serve as a juror and listen to the court's instructions. She also stated that she was "[p]retty confident" that, if selected as a juror, she would be able to decide the issues in the case based on the evidence presented. The Remillards moved to strike Stroberg for cause, and the trial court denied the motion.

On appeal, the Remillards argue that Stroberg's early responses show a bias in favor of the defense. They further claim that her subsequent statements resulted from improper "talismanic" rehabilitation. The record shows, however, that Stroberg was not simply asked whether she could set aside her feelings and render a fair result. Counsel and the trial court questioned her regarding her initial responses and her difficulty with lawsuits against doctors. Although she asserted that it would be hard to sue — or presumably sit in judgment of — doctors "if you still want to use them," she immediately noted that she no longer uses Longstreet's obstetrics services. Furthermore, when asked whether "there is anything wrong

---

[16] Although the Remillards originally asserted that the trial court also improperly rehabilitated juror Grier, they have moved to withdraw this enumeration of error. The Remillards' motion to withdraw is hereby granted.

[17] Although not completely clear from the record, it appears that Longstreet is located in Gainesville, Georgia.

with folks suing doctors," she responded: "No, sometimes it's necessary." Finally, she stated several times that she could probably approach the case with a "fresh mind" and base her decision on the facts presented.

The ongoing patient relationship between Stroberg's children and Longstreet's pediatrics department did not, in and of itself, require her dismissal.[18] And although the Remillards claim that the trial court improperly rehabilitated Stroberg, trial judges are certainly authorized to question a juror that expresses a potential bias. In fact, before ruling on a juror's impartiality following a motion to strike for cause, the trial court *must* inquire, through its own questions or questions of counsel, into the juror's thoughts and beliefs.[19] Such inquiry necessarily involves questioning regarding the nature and extent of the potential bias. These questions are an essential part of voir dire, despite their possible characterization as "rehabilitative."[20]

Finally, Stroberg's assertion that she could "probably," as opposed to "certainly," decide the case fairly did not require her disqualification. As we recently noted:

> A prospective juror's doubt as to his or her own impartiality does not demand as a matter of law that he or she be excused for cause. Nor is excusal required when a potential juror expresses reservations about his or her ability to put aside personal experiences. A conclusion on an issue of bias is based on findings of demeanor and credibility which are peculiarly in the trial court's province, and those findings are to be given deference.[21]

The trial court did not cut off counsel's inquiry or make a decision based upon a talismanic question. On the contrary, it conducted a thorough examination of Stroberg's potential bias. Given this inquiry, as well as the totality of Stroberg's responses, we cannot find that the trial court improperly rehabilitated her.[22] Moreover, the trial court

---

[18] See *Cohen*, supra at 423.

[19] See *Kim*, supra at 178-179.

[20] See *Doss*, supra at 211 (4) (e) ("[A] trial court is allowed by Supreme Court precedent to ask questions of jurors which might lead to their rehabilitation.") (punctuation omitted); *Pitts v. State*, 260 Ga. App. 553, 559 (5) (b) (580 SE2d 618) (2003) (finding that *Kim* decision did not "undermine a trial court's authority to control voir dire and properly inquire about a juror's ability to be impartial").

[21] (Punctuation omitted.) *Harris v. Moss*, 255 Ga. App. 538, 539 (565 SE2d 868) (2002); see also *Doss*, supra at 211 (4) (f) ("Nor is excusal required when a potential juror expresses reservations about his or her ability to put aside personal experiences.").

[22] See *Clark*, supra. Cf. *Kim*, supra; *Valentine v. State*, 265 Ga. App. 139, 141 (2) (592 SE2d

did not abuse its discretion in determining, following its inquiry, that Stroberg's biases or opinions were not so fixed as to require her disqualification for cause.[23]

(b) *Ivan Smith*. Smith stated during voir dire that his Christian beliefs would hinder his judgment in the case because he "look[s] at things from God's point of view." As he explained, "there's human error, people make mistakes and sometimes . . . people die and the motive for suing that person is for money . . . and the money's not going to replace that baby." Smith further stated: "I don't agree personally [with] suing somebody. That's the question I was really struggling with is suing somebody and trying to compensate for a loss of life and that's kind of a moral issue with me, but I struggle with that." Thus, Smith asserted, if placed on the jury, he would "struggle" with whether his belief system would allow him to vote for a monetary award.

Despite these statements, Smith volunteered, without any form of talismanic questioning, that he could "make a judgment based on the evidence." Upon further inquiry, he reiterated that he could decide the case conscientiously and that, if the evidence supported a monetary award for the Remillards, he could vote for such an award. Smith stated: "I can [vote for the award]. I mean I may disagree with it but I can. I can." He noted, however, that sitting on the jury would be a "hard job" because "somebody is going to win and somebody is going to lose."

The Remillards moved to strike Smith for cause based upon his indication that he could not sit in judgment. Longstreet opposed the motion. Although noting that Smith "offered some responses that could support either side's conclusion as to him," the trial court refused to strike him for cause based on his answers "as a whole."

On appeal, the Remillards argue that Smith "consistently and unwaveringly stated that he was not able to decide the case on the merits[ ] and award a judgment if warranted." The record shows otherwise. Smith initially stated that he did not believe in filing lawsuits and that, in his opinion, a monetary award cannot replace a lost life. Ultimately, however, Smith asserted that he could resolve the case conscientiously and, if warranted, award damages.

Once again, we find that the trial court conducted an adequate inquiry into Smith's religious convictions and determined that those convictions would not affect his impartiality. Despite Smith's initial

---

918) (2004) (noting that "[n]either the trial court nor the prosecutor elicited sufficient information about the juror's relationship with the victim's mother 'to allow the court to make an *objective* evaluation of her partiality' "); *Powell*, supra at 758-759 (trial court erred in failing to conduct adequate inquiry of potentially biased juror).

[23] See *Cohen*, supra; *Clark*, supra; *Harris*, supra at 539-540.

responses, this inquiry revealed that he could, in fact, sit in judgment and conscientiously reach a decision. Smith's admission that he — like many jurors — would struggle with the decision certainly did not require his dismissal. Accordingly, the trial court committed no error in refusing to strike Smith from the jury.[24]

*Judgment affirmed. Eldridge and Adams, JJ., concur.*

DECIDED APRIL 8, 2004 —
RECONSIDERATION DENIED MAY 5, 2004 — 

*King & Hobbs, Joseph H. King, Jr., Adrienne P. Hobbs*, for appellants.
*Forrester & Brim, Weymon H. Forrester*, for appellee.