A05A0615. CLACK-RYLEE et al. v. AUFFARTH.
(616 SE2d 193)

BARNES, Judge.

Jill Clack-Rylee and Charles Rylee sued Bradley Auffarth, M.D. for medical malpractice. The jury returned a defense verdict, which they appeal, arguing that the trial court erred in failing to remove a juror for cause. For the reasons that follow, we affirm.

The Rylees argue that juror Conley showed bias, and the court failed to fully explore the bias or allow them to fully explore Conley's bias. Auffarth responds that the Rylees were allowed to question Conley as long as they wished and that Conley displayed no bias requiring the trial court to further explore the issue.

OCGA § 15-12-134 provides:

---

> In all civil cases it shall be good cause of challenge that a juror has expressed an opinion as to which party ought to prevail or that he has a wish or desire as to which shall succeed. Upon challenge made by either party upon either of these grounds, it shall be the duty of the court to hear the competent evidence respecting the challenge as shall be submitted by either party, the juror being a competent witness. The court shall determine the challenge according to the opinion it entertains of the evidence adduced thereon.

"[T]rial courts have broad discretion to evaluate and rule upon a potential juror's impartiality, based upon 'the ordinary general rules of human experience,'" but when bias is shown, "the trial court must do more than 'rehabilitate' the juror through the use of any talismanic question. The court is statutorily bound to conduct voir dire adequate to the situation, whether by questions of its own or through those asked by counsel." *Kim v. Walls*, 275 Ga. 177, 178 (563 SE2d 847) (2002). "A trial court has broad discretion in making this evaluation, and we will not reverse its ruling absent a manifest abuse of discretion." *Remillard v. Longstreet Clinic*, 267 Ga. App. 230, 231 (599 SE2d 198) (2004).

During a lengthy voir dire in this case, juror Conley responded to both general and individual questions. When asked if he thought it was "just wrong" for one person to file a lawsuit against another person, Conley replied, "I'm in a peculiar situation. I'm a pastor, and the Bible teaches me it's wrong for one Christian to file suit against another." After counsel questioned other jurors on the subject, Conley said he wished to clarify his position. He further explained the theological basis for his personal belief, then added,

> That's not to say that I don't think just anybody out here ought to be suing each other. I think they should operate within the justice system. The justice system allows them to do that, and their conscience, their moral conscience, their business conscience doesn't prevent them from doing that, I say have at it. But would I sue somebody that wasn't a Christian brother who had through negligence wronged me? Yes.

Later during individual voir dire, a lengthy colloquy ensued between the Rylees' counsel and Conley about whether he would presume that defendant Auffarth were a Christian because another juror said he attended the juror's church. Conley said he would presume that Auffarth claims to be a Christian, and that if the Rylees were also Christians, that he thought that "there should have been some sort of

attempt to settle the thing." He added, "Am I going to sit here and deny them the processes of justice to be recompensed for a wrong that may have been done to them? I'm not going to sit here and say that they shouldn't do that."

After additional questions, Conley volunteered the following response:

> What I think about whether this couple has a right to sue this doctor or not as far as me and a court of law, if you impanel me as a juror and say will you render a verdict of fairness then what I believe about whether they should sue this doctor or not or whether he should have settled with them or not is not going to matter to me. It's whether or not if they produce a case that says he was wrong then that's the verdict I'll render. I'm talking about purely from the justice point of view, my theology extracted. You're asking me now to come in here as a citizen not as a pastor. . . . [Y]ou're asking me to render under Caesar now, and I'll operate under Caesar's law.

After Conley spoke further about not caring one way or another about being seated on the jury, the trial court asked, "Are you telling us that you would be able to listen to the case and the witnesses and the evidence and then the charge of the Court and apply those principles in this case?" Conley answered, "That's what — that's what I'm trying to say — in my honesty and in my integrity I can do that without prejudicing either side or the other."

When plaintiffs' counsel sought to ask Conley whether he would marry homosexuals if Georgia legalized such marriages, the prospective juror answered that he would not. When plaintiffs' counsel asked why, defense counsel objected, and the court indicated that he agreed the question might have gone too far, but Conley said, "I'd like to answer that, sir. I'll just tell you, what I do in my church and the practice of my religion is entirely different from what's going on in this courtroom." At that point, plaintiffs' counsel said, "Your Honor, that's all the questions I have."

Neither counsel nor the court may "browbeat the juror into affirmative answers to rehabilitative questions by using multiple, leading questions." *Doss v. State*, 264 Ga. App. 205, 211 (4) (c) (590 SE2d 208) (2003). "The court instead must conduct an inquiry, either through its own questioning or allowance of questions by counsel, sufficient to evaluate the potential juror's fairness and impartiality." *Remillard*, supra, 267 Ga. App. at 231. In this case, however, the trial court did not prevent Conley from answering the Rylees' last question, and did not stop the Rylees from exploring the issue further.

Unlike the situation in *Kim v. Walls*, supra, 275 Ga. 177, the trial court here did not curtail further inquiry by plaintiffs' counsel regarding juror Conley's responses; instead, plaintiffs' counsel stated he had no further questions.

The trial court also committed no error by not questioning Conley further after plaintiffs' counsel finished his questions. When plaintiffs' counsel moved to excuse Conley for cause, the court replied, "I feel that I can't excuse him because he says that he does have fundamental Christian beliefs, but he applies them to himself in this setting, but he could listen to the testimony in the case and decide on those merits and not your role as a pastor. Is that what I heard you tell us?" Conley responded, "That's what I told him."

> In order to disqualify a juror for cause, it must be established that the juror's opinion was so fixed and definite that it would not be changed by the evidence or the charge of the court upon the evidence. [Cits.] . . . It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. *Irvin v. Dowd*, 366 U. S. 717, 723 (81 SC 1639, [1642,] 6 LE2d 751) (1961).

(Punctuation omitted.) *Chancey v. State*, 256 Ga. 415, 425 (3) (349 SE2d 717) (1986).

Conley showed no fixed and definite opinions that could not be changed by the evidence or the jury charge. To the contrary, as shown by the quoted passages, Conley made it clear throughout the voir dire that he drew a distinction between his personal, religious faith and pastoral duties on one hand, and his legal obligations and duties on the other. He revealed no disqualifying bias, as the juror did in *Powell v. Amin*, 256 Ga. App. 757 (569 SE2d 582) (2002). In that case, the juror, a pharmacist, "made it clear that he derived a portion of his income from prescription referrals from [the defendant doctor's] office and as a result he was reluctant to serve on the jury," and the trial judge only asked him if he thought he could base his decision solely and exclusively upon the evidence. Id. at 759. Given the juror's bias, we held that the judge should have explored the issue further. In this case, while the trial court would not have abused its broad discretion by conducting further inquiry, we find no manifest abuse in its decision to forego further inquiry because the juror expressed no disqualifying bias.

*Judgment affirmed. Ruffin, C. J., and Johnson, P. J., concur.*

DECIDED JUNE 22, 2005.

Whitmer & Law, James H. Whitmer, George H. Law III, for appellants.

McClure, Ramsay, Dickerson & Escoe, John A. Dickerson, for appellee.