**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and MERCIER, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 15, 2017**

# In the Court of Appeals of Georgia

A17A0607. LUNDY v. THE STATE.

BARNES, Presiding Judge.

Jamal Lundy appeals his conviction for kidnapping with bodily injury, arguing that the evidence was insufficient, he was entitled to a new trial on the general grounds, the trial court should have struck a biased juror for cause, and the jury should have been instructed on lesser included offenses. We find no error and affirm.

Viewed in favor of the verdict,[1] the record shows that around 1:15 a.m. on January 6, 2011, the victim was in her bedroom when Rodney Salter, a friend from the neighborhood, knocked on the door. The victim had used crack cocaine earlier in the day, but was "in [her] right mind" at that point. Salter told her that he needed a ride, which she agreed to provide in exchange for more drugs. The victim met Salter in the driveway, where two other men – whom the victim did not know – also were

---

[1] See *Sachtjen v. State*, 340 Ga. App. 612, 612 (798 SE2d 114) (2017).

waiting. The victim got in her car, with Salter in the passenger seat and the other two men in the back, and drove toward a gas station. On the way, Salter spotted Lundy and told the victim to slow down. The victim had seen Lundy "hanging out" before and had previously bought drugs from him. Lundy ran toward them, calling Salter's name, and the victim stopped to let Lundy inside the car.

The victim continued to the gas station, where Salter bought some gas for her car. Lundy told the victim he had several places to go and would pay her to take him. At Lundy's request, the victim drove to an apartment building, another gas station, and a convenience store. Lundy then directed the victim down a dark road with abandoned houses, where Lundy got out and later returned with a bag containing a large wrench with a hook on the end. Concluding that the men were "stringing [her] along" and would not be supplying drugs, the victim said she wanted to go home, but Lundy told her he "had to do something." Lundy instructed her to drive to a liquor store, where she waited in the car while one or more of the men broke a window. The men then ran back to the car, and Lundy told the victim to "drive, drive, drive, drive," which she did.

The victim again told Lundy that she wanted to go home. Lundy cursed at her, told her "you in it now, we used your car," and pulled a gun on her. The victim kept

2

driving, following Lundy's directions. When they reached a secluded area, Lundy ordered the victim out of the car, pointed the gun at her head, and told her to take off her jewelry and clothes, which she did. Lundy then hit the victim in the head with the gun "so hard [she] thought [he] shot her," and she lost consciousness. When she came to, she was alone and the car was gone. The victim spent six days in the hospital, where she was treated for a head laceration, skull fracture, and cranial bleeding. Her car was later found at an abandoned house.

Salter and Lundy were arrested and charged with hijacking a motor vehicle, armed robbery, kidnapping with bodily injury, aggravated battery, possession of a firearm during the commission of a felony, and possession of firearm by a convicted felon. Salter pled guilty to lesser offenses and testified at trial against Lundy. The jury found Lundy guilty of kidnapping with bodily injury, but not guilty of the remaining charges.

Lundy moved for a new trial on the general grounds, as well as other bases. The trial court denied the motion and Lundy appeals, arguing that the evidence was insufficient to support his conviction and that the trial court erred by denying his motion for new trial on the general grounds, denying his motion to strike a juror for cause, and refusing to charge the jury on lesser included offenses.

1. Regarding Lundy's challenge to the sufficiency of the evidence, our role is to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). "A person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his or her will." OCGA § 16-5-40 (a). The offense carries a more stringent sentence "if the person kidnapped received bodily injury." OCGA § 16-5-40 (d) (4).

Lundy does not identify any particular deficiency in the evidence or any element of the crime that was not established. We find that the evidence that he forced the victim at gunpoint to drive to a secluded location was sufficient to establish the offense of kidnapping. See *Sipplen v. State*, 312 Ga. App. 342, 343-344 (1) (718 SE2d 571) (2011) (evidence was sufficient to establish kidnapping where defendant got inside the victim's truck, pointed a gun at him, and forced him to drive to a location of the defendant's choosing). And the evidence that Lundy struck the victim in the head, causing a laceration, skull fracture, and cranial bleeding, was sufficient to establish the bodily-injury element of the offense. See *Nelson v. State*, 278 Ga. App. 548, 551 (3) (629 SE2d 410) (2006) ("Evidence of any physical injury,

4

however slight, satisfies the bodily injury element necessary to establish kidnapping with bodily injury.") (citation omitted).

2. Lundy contends that the trial court abused its discretion by denying his motion for new trial on the general grounds. We disagree.

> Even when the evidence is legally sufficient to sustain a conviction, a trial judge may grant a new trial if the verdict of the jury is "contrary to . . . the principles of justice and equity," OCGA § 5-5-20, or if the verdict is "decidedly and strongly against the weight of the evidence." OCGA § 5-5-21. When properly raised in a timely motion, these grounds for a new trial – commonly known as the "general grounds" – require the trial judge to exercise a broad discretion to sit as a "thirteenth juror."

(Citation and punctuation omitted.) *White v. State*, 293 Ga. 523, 524 (2) (753 SE2d 115) (2013). "A trial court reviewing a motion for new trial based on these grounds has a duty to exercise its discretion and weigh the evidence and consider the credibility of the witnesses." *Choisnet v. State*, 292 Ga. 860, 861 (742 SE2d 476) (2013). If the trial court performs this duty, then we have no basis for reviewing the court's decision, as "such a decision is one that is solely within the discretion of the trial court." (Citation and punctuation omitted.) *Dixon v. State*, __ Ga. App. __ (2) (b) (__ SE2d __) (Case No. A17A0233, decided April 19, 2017).

5

In its order denying Lundy's motion for new trial on the general grounds, the trial court wrote:

> Having independently considered the credibility of the witnesses the court – as the 13th juror – hereby approves the jury's verdict and concludes the verdict for kidnapping with bodily injury was not decidedly and strongly against the weight of the evidence [and]. . . is not contrary to the principles of justice and equity.

As the order reflects that the trial court performed its duty using the proper legal standard, we have no basis for disturbing the court's exercise of discretion. *Dixon*, __ Ga. App. at __; see also *Smith v. State*, 300 Ga. 532, 534 (1) (796 SE2d 671) (2017).

3. Lundy argues that the trial court erred by denying his motion to strike Juror No. 1, who initially expressed doubt about her ability to be fair and impartial because of her experience as a crime victim. We conclude, however, that the trial court did not abuse its discretion.

Under Georgia law, jurors are presumed to be impartial, and the burden of proving partiality lies with the party seeking to have the juror disqualified. *Wheeler v. State*, 327 Ga. App. 313, 314 (1) (758 SE2d 840) (2014). "[B]efore a juror can be disqualified for cause, it must be shown that an opinion held by the potential juror is so fixed and definite that the juror will be unable to set the opinion aside and decide

6

the case based upon the evidence or the court's charge upon the evidence."

(Punctuation and footnote omitted.) *Douglas v. State*, 340 Ga. App. 168, 169 (1) (796

SE2d 893) (2017). "A prospective juror's doubt as to his or her own impartiality does

not demand as a matter of law that he or she be excused for cause. Nor is excusal

required when a potential juror expresses reservations about his or her ability to put

aside personal experiences." (Punctuation and footnote omitted.) *Remillard v.*

*Longstreet Clinic, P. C.*, 267 Ga. App. 230, 234 (2) (a) (599 SE2d 198) (2004).

Rather, whether to strike a juror for cause lies within the "extremely broad discretion"

of the trial court, *Kim v. Walls*, 275 Ga. 177, 179 (563 SE2d 847) (2002), which "is

uniquely positioned to observe a potential juror's demeanor and thereby to evaluate

his or her capacity to render an impartial verdict." (Punctuation and footnote omitted.)

*Wheeler*, 327 Ga. App. at 315 (1); see also *Jones v. State*, 338 Ga. App. 505, 505 (790

SE2d 301) (2016).

During voir dire, Juror No. 1 disclosed that she had previously been robbed at

gunpoint, that she had testified against her assailant at trial, and that the assailant was

still incarcerated for that crime.[2]

---

[2] The juror also stated that her brother had been tried for aggravated assault, her teenaged son had been shot in the leg accidentally, and she owned a gun for protection.

7

The prosecutor questioned the juror as follows:

[PROSECUTOR]: Anything about that experience that you think would prevent you from being fair and impartial to the State and the defense in this case?

[JUROR]: Uh-huh.

[PROSECUTOR]: You think there is?

[JUROR]: Uh-huh.

[PROSECUTOR]: Tell us about that.

[JUROR]: Because it happened to me, and my life has never been the same since that happened to me.

[PROSECUTOR]: Okay.

[JUROR]: So I feel that I would be unfair to [Lundy] by [being] up here today.

The prosecutor began asking the juror whether she could set aside her personal experience, but defense counsel objected before the juror could answer. The court overruled the objection, and the questioning continued.

[PROSECUTOR]: Would you be able to hold the State to its burden of proving the case beyond a reasonable doubt, listening to the evidence, the witnesses in the case, along with the law the judge would give and decide this case based on its own particulars?

[JUROR]: Uh-huh.

[PROSECUTOR]: You'd be able to be fair--

[JUROR]: I would.

[PROSECUTOR]: --to the State and the defense?

[JUROR]: I would.

Defense counsel then questioned Juror No. 1:

[DEFENSE COUNSEL]: [W]hen the State first asked you whether this would impact your ability to be impartial, didn't you state yes?

[JUROR]: Yes.

[DEFENSE COUNSEL]: Okay. And then later on she asked it a couple of more times and then you changed your answer?

[JUROR]: Uh-huh.

[DEFENSE COUNSEL]: So which is it, can you be fair and impartial or not?

[JUROR]: Yes, I can.

[DEFENSE COUNSEL]: And you're sure of that?

[JUROR]: I'm sure.

[DEFENSE COUNSEL]: Then why did you answer earlier that you couldn't be?

[JUROR]: Because it just the effect that it . . . [has] on me, but I can be fair. She asked me could I look beyond that and I can. I will try to.

Defense counsel later moved to strike Juror No. 1 based on her original response that she could not be fair, arguing that she changed her answer only because she realized that she would be struck from the jury if she did not do so. The trial court denied the motion. The court stated that it had been "struck by [the juror] and watched her" and that he believed her original response was a "knee-jerk response" to the prosecutor's questioning, which "occurs a lot of times before [potential jurors] start really thinking about what they're doing." The court noted that the juror "came back and she said I can be fair and impartial and I can look beyond my personal experience." Based on the juror's "demeanor" and "voice," the court was "satisfied that she can be fair and impartial." Lundy maintains that Juror No. 1 should have been struck based on her original statement that she could not be fair.

After a juror has expressed doubts about her ability to be fair and impartial, "[t]he parties and the trial court are permitted to ask questions that might rehabilitate [the] juror, but it is improper to browbeat the juror into affirmative answers to rehabilitative questions by using multiple, leading questions." (Citation and punctuation omitted.) *Clarke v. State*, 325 Ga. App. 472, 473 (753 SE2d 134) (2013). The record shows that the prosecutor did not ask Juror No. 1 the same question multiple times. Rather, the prosecutor explored the juror's professed bias by asking

what had happened to her and whether she could nevertheless hold the State to its burden of proof. The juror "confirmed that [s]he could be fair and impartial in reaching a verdict and that [s]he would not let [her] past experiences affect [her] ability to reach a verdict." Id. at 474 (a). Based on the juror's responses, demeanor, and voice, the trial court determined that the juror could be fair and impartial despite her personal experiences. Under these circumstances, we find no abuse of the trial court's "extremely broad discretion." *Kim v. Walls*, 275 Ga. at 179; see also *Clarke v. State*, 292 Ga. 305, 307-308 (2) (737 SE2d 575) (2013) (trial court did not abuse discretion by declining to strike juror who initially expressed reservations about her impartiality, but ultimately confirmed that she could be fair).

4. Lundy complains that the trial court erred by denying his requests to charge the jury on the lesser included offenses of false imprisonment and kidnapping. "The complete rule with regard to giving a defendant's requested charge on a lesser included offense is: where the state's evidence establishes all of the elements of an offense *and there is no evidence raising the lesser offense,* there is no error in failing to give a charge on the lesser offense." (Citation and punctuation omitted; emphasis in original). *Brown v. State*, 275 Ga. App. 99, 103 (2) (c) (619 SE2d 789) (2005).

11

Here, the trial court did not err because there was no evidence raising the lesser offenses.

(a) *False imprisonment.* "A person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority." OCGA § 16-5-41 (a). The difference between kidnapping and false imprisonment is "the element of asportation." *Curtis v. State*, 310 Ga. App. 782, 787 (2) (714 SE2d 666) (2011). A trial court should give a charge on false imprisonment as a lesser included offense of kidnapping "when the evidence supports a theory that the victim was falsely imprisoned without having been asportated in the manner alleged by the State." *Brown v. State*, 275 Ga. App. at 104 (d). In this case, the State presented evidence that Lundy detained the victim inside her car and made her drive to a secluded location. Although Lundy challenged the credibility of the State's witnesses, he presented no evidence of any alternative scenario involving detention without asportation. Thus, there was no evidence of false imprisonment, and the trial court did not err by refusing to charge the jury on that offense. See id.; *Harrell v. State*, 253 Ga. App. 691, 695 (4) (a) (560 SE2d 295) (2002) (court did not err by refusing to give false imprisonment charge where "[t]he

12

evidence [did] not show that [the victim] was falsely imprisoned without being forced to drive where [the defendant] instructed him to go").

(b) *Kidnapping*. "[K]idnapping is a lesser included offense of kidnapping with bodily injury, lacking only the element of bodily injury." (Punctuation and footnote omitted.) *Harrell v. State*, 253 Ga. App. at 695 (4) (a). Here, both the victim and Salter – the only two eyewitnesses who testified at trial – stated that Lundy hit the victim in the head with a gun or gun-like object, and the physicians who treated the victim testified that her injuries likely resulted from a blow to the head by a blunt object. There was no evidence that the victim's injuries occurred in any other manner.[3] In the absence of any such evidence, the trial court did not err by not instructing the jury on simple kidnapping. See *Sears v. State*, 268 Ga. 759, 766 (16) (a) (493 SE2d 180) (1997) (no error in refusing to give charge on simple kidnapping

---

[3] Lundy points out that the physician who examined the victim during the latter half of her hospital stay testified that it was "possible" that her injuries resulted from falling and striking an object. (The other physician, who treated her the day she arrived, testified that the injuries "would be from" a blow to the head rather than a fall because falls typically cause abrasions, which the victim did not have.) But as the State points out in its brief, the physician's "speculative response that the wound itself could be the result of a fall, is not evidence that the victim fell. It is merely the opinion of [the physician] that he could not rule out a fall as the cause of the injury."

13

where the issue for the jury was "whether [defendant] participated in the crime, not whether the bodily injury occurred").

*Judgment affirmed. McMillian and Mercier, JJ., concur.*