A03A1393. BENNETT v. MULLALLY.
(587 SE2d 385)

BARNES, Judge.

Christine Mullally sued Lehue Bennett for injuries she sustained when his truck struck her while she was crossing a street on foot, in a crosswalk. The first jury trial resulted in a defense verdict, and the trial court subsequently granted Mullally's motion for a new trial. The second jury returned a verdict for Mullally in the amount of $128,359 in damages, and the trial court entered judgment against Bennett for that amount, plus pre-judgment interest of 12 percent on

---

[2] OCGA § 13-3-1.

[3] See *Santiago v. Klosik*, 199 Ga. App. 276, 277-278 (2) (404 SE2d 605) (1991).

$100,000 from May 2, 1999, to the date of the judgment. Bennett appeals, contending that the trial court erred in granting the motion for new trial, in allowing a police officer to offer opinion testimony, and in granting pre-judgment interest. For the reasons that follow, we affirm.

1. Bennett contends that the trial court judge, who did not preside over the first trial, erred in granting Mullally's motion for a new trial after the first verdict. Mullally argued in her motion for a new trial that she was unduly prejudiced because the judge who presided over her trial failed to strike two jurors for cause. Those jurors' responses during voir dire showed that they were biased against her and that their opinions that they would not award damages for pain and suffering were fixed. Mullally argued that the "court did not engage in any meaningful juror rehabilitation." In granting her motion for a new trial, the trial court held, "[I]t is clear that [juror] Moore had the opinion that the Defendant should prevail on Plaintiff's claim for pain and suffering."

Bennett asserts that the discretion of a successor judge who did not preside over a trial is more limited in scope than the discretion of the judge who did preside. In considering the appellate standard of review on the grant of a motion for new trial, the Supreme Court of Georgia first noted that, "The scope within which the discretion [to grant a new trial] may be exercised, in the consideration of the evidence, by a judge who did not preside at the trial is not as extensive as in the case of the judge who heard and observed the witnesses and who, in a sense, is to be considered as the thirteenth member of the jury." *Head v. CSX Transp.*, 271 Ga. 670, 672 (2) (524 SE2d 215) (1999), citing *Throgmorton v. Trammell*, 90 Ga. App. 433, 435 (2) (a) (83 SE2d 256) (1954). The court in *Throgmorton* continues: "There is no language in . . . the Code from which it can be inferred that the grant of a first new trial is ever an abuse of discretion, unless the verdict set aside was demanded by the evidence adduced upon the trial." Id.

In this case, the ground on which the trial court granted Mullally's motion for new trial did not involve witness credibility or demeanor, factors that the judge who presided over the trial would be more suited to evaluate. Instead, the trial court determined, based on the transcript of the voir dire of a particular juror, that the presiding judge should have excused this juror for cause. As required by OCGA § 5-5-50, we will not reverse the first grant of a new trial unless the verdict set aside by the trial court was absolutely demanded. *Thomas v. Wiley*, 240 Ga. App. 135, 137 (3) (522 SE2d 714) (1999). "This rule applies even though the judge who heard the case ceased to hold office before the hearing of the motion for new

trial, and it was passed on by his successor." *Berman v. Berman*, 231 Ga. 216, 218 (3) (200 SE2d 870) (1973).

In its order granting Mullally's motion for new trial, the trial court stated

> Regarding juror Moore, Plaintiff's counsel stated that Mr. Moore had expressed an opinion on the subject of pain and suffering. Mr. Moore stated that he felt the same way as another potential juror, Mr. Cetti, that "there are maybe a few too many lawsuits today. . . ." Mr. Moore stated that money awarded to someone who has been injured should be "just to cover expenses" and that "expenses is [sic] the only thing that . . . should be recoverable." Mr. Moore stated that he thought for the most part pain and suffering should not be awarded. Mr. Moore stated that he had had that opinion for a long time. The trial court never attempted to rehabilitate Mr. Moore regarding his opinion that pain and suffering should not be awarded. The only rehabilitation undertaken by the court occurred on page 49 of the transcript where the trial court asked the juror[s], "Are any of you here unwilling to follow the law[?]" The trial court denied Plaintiff's Motion to excuse Mr. Moore for cause. In denying the Motion, the trial court stated to the jurors, "I'm going to presume that whatever attitudes jurors had or have when you come into this room could possibly change after you hear the charge of the Court and what items you are to consider."

The court then noted that Mullally had used all of her peremptory strikes, one of which was used to excuse juror Moore, and that requiring a litigant to exhaust peremptory strikes on unqualified jurors is harmful error.

OCGA § 15-12-134 provides:

> In all civil cases it shall be good cause of challenge that a juror has expressed an opinion as to which party ought to prevail or that he has a wish or desire as to which shall succeed. Upon challenge made by either party upon either of these grounds, it shall be the duty of the court to hear the competent evidence respecting the challenge as shall be submitted by either party, the juror being a competent witness. The court shall determine the challenge according to the opinion it entertains of the evidence adduced thereon.

"[T]rial courts have broad discretion to evaluate and rule upon a potential juror's impartiality, based upon 'the ordinary general rules of human experience,'" but when bias is shown, "the trial court must

do more than 'rehabilitate' the juror through the use of any talismanic question. The court is statutorily bound to conduct voir dire adequate to the situation, whether by questions of its own or through those asked by counsel." *Kim v. Walls*, 275 Ga. 177, 178 (563 SE2d 847) (2002). In this case, the presiding judge failed to conduct voir dire adequate to the situation, and therefore we conclude that the trial court did not abuse its discretion in granting Mullally's motion for a new trial.

2. Bennett next argues that the trial court erred in allowing a police officer to testify that his opinion was

> that the vehicle, the truck operated by Mr. Bennett, was a red truck, was east on Bay Street behind a tractor-trailer truck, according to what he told me, and my opinion from the evidence at the scene and the two witnesses, that Mr. Bennett entered the intersection, going past the stop line on a red signal, and struck the — the mirror on his truck struck the pedestrian.

Bennett contends that allowing the officer to testify that Bennett ran the red light was harmful error.

An investigating officer's opinion testimony regarding the sequence of events involved in a vehicle collision is admissible evidence. See *Mayer v. Wylie*, 244 Ga. App. 481, 482 (535 SE2d 816) (2000). A police officer with investigative experience on automobile collisions is an expert who may testify as to the cause of an accident he investigated. *Jefferson Pilot Life Ins. Co. v. Clark*, 202 Ga. App. 385, 392 (3) (414 SE2d 521) (1991). "[A]n opinion on the cause of the accident is an assessment of fact and not a legal conclusion or a conclusion constituting a mixture of law and fact." Id.

The officer testified that he had been a police officer for fifteen years, the first ten on patrol responding to 911 calls, then in the traffic unit, then for the last three and one-half or four years specializing in serious wreck and fatality investigations. When he wrote the report on this accident, he had taken numerous accident investigation classes and had street experience in what to look for, where to look for it, and how to reflect his findings in the reports he prepared. He diagrammed the scene, the location of Mullally's body on the ground, the estimated point of impact, and the approximate location of Bennett's truck. He located and interviewed separately two "neutral third party" witnesses at the scene, one of whom was a pedestrian walking behind Mullally and one of whom was a pedestrian on the opposite side of the intersection. The statements of both witnesses matched exactly. He also interviewed Bennett at the scene and Mullally later at the hospital. He checked the lights and pedes-

trian signals by watching them cycle through their sequences to make sure they were working properly. He examined the truck and determined that the passenger side mirror was broken and the mirror frame was damaged. The officer concluded that the mirror hit Mullally in the head, spun her around, and threw her into the side of the truck. He based his conclusion that Bennett entered the intersection on a red signal on the two independent witnesses' statements and on the location of Mullally's body in the crosswalk.

The ultimate issue in this case, which was for the jury to decide, was whether Bennett was negligent or not, and the officer did not give an opinion regarding Bennett's negligence. "He was not asked, nor did he intimate, who was or was not negligent, which was the ultimate question to be decided by the jury. He gave his opinion, based on certain facts, as to the sequence of events. This is the purpose of having an expert witness testify." *Massee v. State Farm &c. Ins. Co.*, 128 Ga. App. 439, 444 (3) (197 SE2d 459) (1973); *Strickland v. Stubbs*, 218 Ga. App. 279, 281 (4) (459 SE2d 473) (1995). "Therefore, we conclude that the trial court properly allowed the testimony of the police officer." *Felton v. White*, 197 Ga. App. 367, 368 (1) (398 SE2d 425) (1990).

3. Bennett contends the trial court erred in awarding prejudgment interest on $100,000 from the date of Mullally's demand letter to the date of the judgment, arguing that notice to his lawyer and not to him personally was insufficient. He further argues that it is unfair to require him to pay interest during the two years between the first defense verdict and the trial court's ruling on Mullally's motion for a new trial, because the delay was not within his control.

The Unliquidated Damages Interest Act, OCGA § 51-12-14, provides that a claimant who receives a verdict for an amount of unliquidated damages in a tort action of not less than the amount previously demanded is entitled to 12 percent interest from the thirtieth day following the date the written demand was mailed until the date of judgment. The statute directs that the notice of demand must be sent "to a person against whom claim is made." In holding that notice to an insurance claims adjustor does not constitute notice to a tortfeasor as required by the statute, this court noted that the adjustor was not the claimant's attorney. *Resnik v. Pittman*, 203 Ga. App. 835 (418 SE2d 116) (1992). The Civil Practice Act provides that "every written notice, appearance, demand, offer of judgment, and similar paper shall be served upon each of the parties," OCGA § 9-11-5 (a), and further provides that when "service is required or permitted to be made upon a party represented by an attorney, the service shall be made upon the attorney unless service upon the party himself is ordered by the court." OCGA § 9-11-5 (b). Notice to a party's

lawyer constitutes notice to the party under OCGA § 51-12-14, and the trial court did not err in this regard.

As to Bennett's argument that he is being unfairly penalized for delays in the resolution of this case that were totally outside his control, the statute does not establish any exceptions to the running of the interest period. "The purpose of prejudgment interest is to compensate the injured party for the delay in receiving money damages." (Punctuation omitted.) *Peters v. Hyatt Legal Svcs.*, 220 Ga. App. 398, 401 (2) (469 SE2d 481) (1996). The acceptance of Mullally's offer to settle for $100,000 was always within Bennett's control, and we find no error in the trial court's award of pre-judgment interest.

*Judgment affirmed. Adams, J., concurs. Andrews, P. J., concurs in the judgment only.*

DECIDED SEPTEMBER 15, 2003.

*Barrow & Sims, R. Stephen Sims*, for appellant.
*V. Claire Cornwell-Williams, Eugene C. Brooks IV*, for appellee.