## A11A1928. HARPER v. BARGE AIR CONDITIONING, INC.
### (722 SE2d 84)

DILLARD, Judge.

Following a trial by jury, Jocelyn Harper appeals a verdict in favor of Barge Air Conditioning, Inc. ("Barge") on Harper's claims related to an incident in which she sustained brain damage as a result of carbon-monoxide poisoning. On appeal, Harper argues that the trial court erred in (1) failing to strike two potential jurors for cause and (2) failing to strike the entire jury venire after Barge made reference to a collateral source of recovery during voir dire. For the reasons set forth infra, we reverse the judgment in favor of Barge and remand for a new trial.

The underlying facts of this case are not fully borne out by the record before us, but they are set forth in great detail in a prior opinion issued by this Court.[1] Indeed, this appeal is the second in a history of litigation between Harper and Barge, in which Harper contends that "she suffered brain damage after being exposed to high levels of carbon monoxide at her former place of employment, AutoZone."[2] Specifically, Harper alleges that on the day she was injured, a technician from Barge had serviced a heating, ventilating, and air conditioning unit at the store; and she thereafter filed suit against the company under a theory of respondeat superior.[3]

---

[1] *See Harper v. Barge Air Conditioning, Inc.*, 300 Ga. App. 901, 901-05 (1) (686 SE2d 668) (2009) (physical precedent only).

[2] *Id.* at 901 (1).

[3] *Id.*

In the parties' first appearance before this Court, we reversed the trial court's grant of a directed verdict in favor of Barge and remanded for retrial of Harper's personal-injury action.[4] The current appeal follows the retrial of this matter, which resulted in a jury verdict in favor of Barge.

Harper argues in this appeal that her right to a fair and impartial jury trial was violated by two errors committed during jury selection. Namely, she contends that two biased jurors should have been excused by the trial court for cause and that the entire jury venire was tainted by a question from Barge that "nakedly telegraphed to the panel that the plaintiff was already being compensated by a worker's compensation payout." We will address each of these enumerations in turn.

1. First, Harper argues that the trial court abused its discretion and erred in denying her motion to strike two jurors who expressed bias in favor of Barge. We agree.

At the outset, we note that "it shall be good cause of challenge that a juror has expressed an opinion as to which party ought to prevail or that he has a wish or desire as to which shall succeed."[5] And when a challenge has been made upon either ground, the trial court has a duty "to hear the competent evidence respecting the challenge as shall be submitted by either party, the juror being a competent witness."[6] In this regard, our Supreme Court has explained that

> when a prospective juror has a relationship with a party to the case that is either close or subordinate, or one that suggests bias, the trial court must do more than "rehabilitate" the juror through the use of any talismanic question. The court is *statutorily bound to conduct voir dire adequate to the situation*, whether by questions of its own or through those asked by counsel.[7]

We require this because a trial judge "is the only person in a

---

[4] *See id.* at 907 (2).

[5] OCGA § 15-12-134; *see also Mobley v. Wright*, 253 Ga. App. 335, 337 (3) (559 SE2d 78) (2002) ("Where the juror appears partial to one side or the other or through voir dire demonstrates a lack of impartiality, such constitutes good cause for the judge in his discretion to remove the juror to preserve the integrity of an impartial and fair jury trial and serve thereby the ends of justice."). *See generally Cambron v. State*, 164 Ga. 111, 114 (137 SE 780) (1927) ("In the interest of [a] fair trial, if error is to be committed, let it be in favor of the absolute impartiality and purity of the jurors, rather than in a too-technical observance of the letter of cases previously adjudicated and an attempt to bring the facts of other cases within some particular ruling." (punctuation omitted)).

[6] OCGA § 15-12-134.

[7] *Kim v. Walls*, 275 Ga. 177, 178 (563 SE2d 847) (2002) (emphasis supplied).

courtroom whose primary concern, indeed primary duty, is to ensure the selection of a fair and impartial jury."[8] But because trial courts are vested with broad discretion in evaluating and ruling upon a potential juror's impartiality, we will only reverse when there has been a "manifest abuse" of the trial court's discretion.[9]

In the case sub judice, Harper takes issue with two potential jurors that the trial court refused to strike for cause after the jurors admitted that they would be inclined to find in Barge's favor due to having personal and professional relationships with Barge's counsel. The first was Juror 30, from whom Harper's counsel elicited the following testimony after asking whether any member of the jury venire knew opposing counsel:

> JUROR [30]: I'm a CPA in Cordele.
>
> [COUNSEL]: You know —
>
> JUROR [30]: I mean, he's my client and my attorney, so you know I've worked on many occasions with him.
>
> [COUNSEL]: I'm not sure this is — I don't want to be inappropriate with the question, but is he your current client?
>
> JUROR [30]: Yes.
>
> [COUNSEL]: Is it on a personal basis?
>
> JUROR [30]: Yes.
>
> [COUNSEL]: Well, I've asked a few times, but I'm going to have to ask again if that would — he's your client, would you be inclined to try to find in his favor?
>
> JUROR [30]: What do you think? *Of course.*[10]

Counsel for Harper thereafter moved on to Juror 32, who had also indicated that she knew opposing counsel. In questioning Juror 32, the following colloquy transpired:

> JUROR [32]: His son graduated with my daughter and he's (Inaudible). He's represented me on several things.
>
> [COUNSEL]: And I don't want to pry too much, but can you give me just a real general idea of the types of things he's represented —
>
> JUROR [32]: On a house closing, the will, and my divorce.
>
> [COUNSEL]: He was — he represented you in that process?

---

[8] *Id.* (punctuation omitted).

[9] *Id.*

[10] Emphasis supplied.

JUROR [32]: (No Audible Response).

[COUNSEL]: Would your experience with [Barge's counsel], him being your lawyer previously, would that affect you if you're asked to be on this jury and find either for or against his client?

JUROR [32]: *That could probably affect it.*

[COUNSEL]: Would you be inclined to tilt towards [Barge's counsel]?

JUROR [32]: *Yes, sir.*[11]

And when it came time for Barge's counsel to question the potential jurors, he acknowledged that some knew him and that others knew the defendant due to living and working together in the same small community. He then explained to the panel that the attorneys were not looking for jurors who were uneasy about serving but were instead "looking for . . . if you are so fixed in your mind that you have already developed a definite fixation and you'll be unable to set that aside in spite of the evidence." Barge's counsel then questioned the panel as a whole as to whether anyone was "so prejudiced, so fixed in their mind that they can't follow the Judge's questions and they can't follow the evidence that is produced in this trial." Neither Juror 30 nor Juror 32 responded to this line of inquiry.

Thereafter, Barge's counsel made additional remarks about wanting to empanel jurors who would not rush to judgment, who would wait to hear all of the evidence, and who were "a little bit curious," before asking whether there was "any juror in here that cannot do these things." Again, neither Juror 30 nor Juror 32 responded to this line of inquiry.

Thereafter, when it came time for the parties to make their respective motions to excuse jurors, Harper sought to strike Jurors 30 and 32 for cause on the basis that they had both expressed a bias in favor of Barge. In response, Barge's counsel argued that the two jurors had not met the standard required to be struck for bias, namely "a prejudice so fixed that you can't follow the evidence." The trial court denied Harper's motions to strike for cause, and Harper used two peremptory strikes on Jurors 30 and 32, which prevented her from using those strikes as to other potential jurors. And after the jury returned a verdict in favor of Barge, the trial court likewise denied Harper's motion for new trial on this same ground.

Our review of the record reveals that the trial court abused its discretion by failing to strike Jurors 30 and 32 for cause. Indeed,

[11] Emphasis supplied.

once Harper challenged Jurors 30 and 32 for cause, the trial court was required to "conduct an inquiry, either through its own questioning or allowance of questions by counsel, sufficient to evaluate the potential juror's fairness and impartiality."[12] But this inquiry needed to consist of more than attempted "rehabilitation" of the jurors through "talismanic" questions, "such as whether the juror can set aside his personal feelings and decide the case based solely on the evidence and the law."[13]

Here, the trial court made absolutely *no* inquiry of Jurors 30 and 32, despite their admissions to bias in favor of Barge.[14] And the most that can be said of any generalized inquiry by Barge's counsel is that it consisted solely of the very "talismanic" questions this Court has previously cautioned against.[15] Moreover, the questions posed by Barge's counsel to the jury venire were asked of the panel as a whole as opposed to Jurors 30 and 32 specifically.[16] Thus, we conclude that the trial court clearly abused its discretion in failing to make the proper inquiry and/or failing to strike for cause when Jurors 30 and 32 explicitly expressed bias toward Barge based on their relationships with its counsel—a situation, we note, that starkly contrasts with cases in which a potential juror had a relationship with a party

---

[12] *Remillard v. Longstreet Clinic, P.C.*, 267 Ga. App. 230, 231 (599 SE2d 198) (2004); *see also Kim*, 275 Ga. at 178.

[13] *Remillard*, 267 Ga. App. at 231.

[14] *See Bennett v. Mullally*, 263 Ga. App. 215, 217-18 (1) (587 SE2d 385) (2003) (new trial proper when "presiding judge failed to conduct voir dire adequate to the situation" and did not attempt to rehabilitate a juror who expressed bias). *Compare Hardy v. Tanner Med. Ctr., Inc.*, 231 Ga. App. 254, 256 (4) (499 SE2d 121) (1998) (juror who "initially stated that she might not be able to be totally impartial" was sufficiently rehabilitated through further inquiry). *Cf. Clack-Rylee v. Auffarth*, 273 Ga. App. 859, 862 (616 SE2d 193) (2005) (holding that when potential juror "made it clear throughout the voir dire that he drew a distinction between his personal, religious faith . . . and his legal obligations[,]" trial court did not abuse its discretion in forgoing further inquiry because juror did not express a disqualifying bias).

[15] *See Clack-Rylee*, 273 Ga. App. at 860 (advising that when bias is shown, "the trial court must do more than 'rehabilitate' the juror through the use of any talismanic question" (punctuation omitted)); *Bennett*, 263 Ga. App. at 217-18 (1) (same); *Walls v. Kim*, 250 Ga. App. 259, 260 (549 SE2d 797) (2001) (holding that juror was not rehabilitated by judge's asking if she could "set aside her preconceived notions and decide the case on the law and evidence"); *see also Garduno v. State*, 299 Ga. App. 32, 34-35 (2) (682 SE2d 145) (2009) ("[J]urors who have expressed a bias may well mistakenly believe that they can set aside their preconceptions and inclinations–certainly every reasonable person wants to believe he or she is capable of doing so." (punctuation omitted)).

[16] *See Bennett*, 263 Ga. App. at 217 (1) (holding that trial court never attempted to rehabilitate juror who expressed bias when "[t]he only rehabilitation undertaken by the court" occurred when it asked all jurors if they were willing to follow the law). *Compare Rucker v. State*, 270 Ga. 431, 432-33 (2) (510 SE2d 816) (1999) (trial court rehabilitated juror through questioning directed at her specifically); *Remillard*, 267 Ga. App. at 233-35 (2) (a)-(b) (trial court conducted its own adequate inquiry, specifically addressing two jurors who had expressed sentiments of potential bias).

or counsel but expressed *no* bias.[17]

Accordingly, we reverse the judgment in favor of Barge and remand the case for a new trial.[18] In doing so, we "deplore the significant burden a [second] retrial will impose, not only on the parties, but on the community as well," and "[w]e are particularly troubled by the trial court's willingness to infect a trial with this kind of error when a solution (excusing the juror[s] for partiality) was so readily available."[19] Nevertheless, we remain steadfast in our commitment as a Court to safeguarding the sacrosanct and cherished right to a fair and impartial jury trial,[20] and we will continue to remand this case back to the trial court until Harper is provided with same.

2. Likewise, we are required to reverse based on Harper's second enumeration of error, which also relates to voir dire and which we address to avoid any possible repetition at retrial. Specifically, Harper contends that Barge "tainted" the jury pool by asking a prejudicial question that referred to a collateral source of recovery. We agree.

The record shows that at the beginning of Barge's voir dire of the jury venire, in the midst of engaging in the generalized questions

---

[17] *See Berry v. State*, 302 Ga. App. 31, 33 (1) (690 SE2d 428) (2010) (holding that court would not imply bias when juror admitted to having a friendship and business relationship with district attorney but also stated that she was not biased); *Remillard*, 267 Ga. App. at 232 (1) (holding that court would not presume prejudice when six jurors admitted to having continuing patient relationships with doctors employed by defendant but also testified that the relationship "would not affect their ability to render a fair verdict in the case"); *Smith v. Folger*, 237 Ga. App. 888, 889 (2) (517 SE2d 360) (1999) (holding that potential juror was not disqualified by wife's representation by defense counsel when he expressed no bias); *see also Ford Motor Co. v. Gibson*, 283 Ga. 398, 406 (7) (659 SE2d 346) (2008) (holding that trial court did not abuse discretion in rehabilitating jurors who expressed general distrust of corporations but unequivocally expressed no bias toward either party in the case); *Moore v. Moore*, 281 Ga. 81, 84 (4) (635 SE2d 107) (2006) (holding that husband completely failed to meet the burden of rebutting presumption of impartiality regarding prospective juror whose wife was a current client of opposing counsel).

[18] *See Guoth v. Hamilton*, 273 Ga. App. 435, 440-41 (1) (615 SE2d 239) (2005) (reversing and remanding for a new trial because appellant exhausted all peremptory challenges when trial court failed to strike jurors for cause); *see also Pickering v. Wagnon*, 91 Ga. App. 610, 612 (86 SE2d 621) (1955) (reversible error when plaintiff exhausted peremptory strikes).

[19] *Guoth*, 273 Ga. App. at 440-41 (1) (punctuation omitted).

[20] *See* Ga. Const. Art. I, Sec. I, Para. XI (a) (*providing that the right to a jury trial* "shall remain inviolate"); *Melson v. Dickson*, 63 Ga. 682 (1879) (holding that "an impartial jury is the corner-stone of the fairness of trial by jury"); *Jones v. Cloud*, 119 Ga. App. 697, 706 (5) (168 SE2d 598) (1969) (same); *id.* at 707 (5) ("A jury trial is a travesty unless the jurors are impartial." (punctuation omitted)); *see also* Morris S. Arnold, *A Historical Inquiry into the Right to Trial by Jury in Complex Civil Litigation*, *in* The Bill of Rights: Original Meaning and Current Understanding 399, 400 (Eugene W. Hickok, Jr. ed. 1993) ("That special affection for the jury ought to be viewed as relevant not just to the fact that jury trial was 'preserved' in the Constitution; it is relevant as well to interpreting the scope of the actual provision, for it gives the right granted an aura and the Constitution a meaning they would not otherwise have if the institution of jury trial had been regarded more or less indifferently.").

discussed supra, counsel made the following statement: "So that my questions will have some basis and some foundation[,] let me tell you just a little bit about what this case is about." Barge's counsel then gave a brief description of the background facts and issues in the case—namely, whether Barge was responsible for the discharge of carbon monoxide inside the AutoZone. When Harper's counsel objected, Barge's counsel again explained that the purpose was to "give a short statement about what the case is about so the questions will have some meaning to them."

After finishing the summary of the case and the other aforementioned questions, Barge's counsel immediately asked the following:

> Now, has any member of this jury panel ever made a Workers' Compensation claim and at the same time sued another third party for the same injury? Have any of y'all ever had one of those kind of claims?

No juror responded. After the jury venire had been excused for lunch and the court had entertained motions to strike, Harper requested a new jury panel and argued that Barge's question had poisoned the jury pool and prejudiced Harper. The trial court denied the motion. In doing so, the trial court erred.

In Georgia, the collateral-source rule "bars the defendant from presenting any evidence as to payments of expenses of a tortious injury paid for by a third party and taking any credit toward the defendant's liability and damages for such payments."[21] Thus, while it would have been permissible to question the jury panel as to whether they had ever filed a personal-injury claim in general[22] or whether they had any relation to an insurance company involved in the litigation,[23] the question posed by Barge's counsel was inherently prejudicial because its wording permitted the jury to infer that Harper had already been compensated by a collateral source.[24]

---

[21] *Kelley v. Purcell*, 301 Ga. App. 88, 91 (686 SE2d 879) (2009) (punctuation omitted).

[22] *See Yale v. Stapleton Corp.*, 377 Fed. Appx. 839, 840 (II) (11th Cir. 2010) (holding that district court did not err in explaining the nature of workers' compensation to potential juror after court inquired whether members of panel had ever filed a lawsuit; explanation and question did not suggest that plaintiff had ever received workers' compensation benefits); *McMillin v. Union Elec. Co.*, 820 SW2d 352, 354 (Mo. Ct. App. 1991) (holding that question about workers' compensation was permissible when asked in context of all types of personal-injury claims).

[23] *See Crosby v. Spencer*, 207 Ga. App. 487, 490 (6) (428 SE2d 607) (1993) ("It is proper to qualify the jury relative to the possible interest which the members may have in an insurance carrier having a financial interest in the outcome of the suit." (punctuation omitted)).

[24] *Compare Yale*, 377 Fed. Appx. at 841 (II) ("[N]othing in the court's exchange with the prospective jurors in this case suggested that the plaintiff had filed a worker's compensation

Indeed, Barge's counsel repeatedly mentioned that the summary of the case immediately preceding his question was intended to give the jury venire enough information to put his questions into context.[25] And by failing to grant Harper's motion for a new panel or—at the very least—provide a curative instruction, the trial court further compounded the error discussed in Division 1, supra.[26]

Accordingly, for all the foregoing reasons, we reverse the judgment in favor of Barge and remand for a new trial.

*Judgment reversed and case remanded for new trial. Mikell, C. J., and Smith, P. J., concur.*

DECIDED DECEMBER 16, 2011 —
RECONSIDERATION DENIED DECEMBER 30, 2011 —

*Bell & Mulholland, Lloyd N. Bell, Robert E. Mulholland*, for appellant.

*Crim & Bassler, Harry W. Bassler*, for appellee.

---

claim or received worker's compensation benefits."); *McMillin*, 820 SW2d at 354 (question about workers' compensation in context of claims in general provided no indication of having been "designed to inject insurance into the case" or having been "asked in bad faith"). *Cf. Cincinnati Ins. Co. v. Reybitz*, 205 Ga. App. 174, 177 (1) (a) (421 SE2d 767) (1992) ("The admission of evidence of no-fault insurance coverage is inherently prejudicial in a negligence action against the insured.").

[25] *Compare Yale*, 377 Fed. Appx. at 841 (II); *McMillin*, 820 SW2d at 354.

[26] *See Mitchell v. State*, 284 Ga. App. 209, 209 (1) (644 SE2d 147) (2007) ("When a panel of potential jurors is exposed to a prejudicial remark or question, the remedies are to request a postponement until a new panel of jurors can be selected or to challenge the poll of the jury.").