### A12A0506. LIPSCOMB v. THE STATE.
(727 SE2d 221)

DILLARD, Judge.
Following a trial by jury, Phillip David Lipscomb was convicted of one count of child molestation. On appeal, Lipscomb contends that (1) the evidence was insufficient, (2) the trial court erred in denying a motion to strike a juror for cause, and (3) the trial court erred in denying a motion for mistrial when the State during closing arguments made remarks that he alleges were improper. For the reasons set forth infra, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record reflects that on the evening of April 14, 2010, Lipscomb was

---

[1] *See, e.g., DeLong v. State*, 310 Ga. App. 518, 518 (714 SE2d 98) (2011).

playing video games at the home of his brother and sister-in-law. Around 8:00 p.m., Lipscomb's brother and sister-in-law decided to run two quick errands and to leave their children, three-year-old K. L. (the victim) and five-year-old N. L., with Lipscomb because the children had just been put in bed. When the parents returned approximately 20 minutes later, the mother immediately checked in on the children. She found N. L. asleep in his room, but K. L. was awake and whining in her bed. The mother apologized for disturbing K. L., left her in bed, and proceeded to the bathroom. But K. L. followed her mother to the bathroom and immediately made an outcry against Lipscomb, who was known to the children as "Uncle PJ." When asked what was wrong, K. L. told her mother that Uncle PJ "licked my butt and stuck his finger in my wee-wee." The mother then lifted K. L.'s shirt and saw that the child's underwear was on sideways, with both legs through one hole.

Thereafter, K. L.'s father was summoned to the bathroom, where K. L. repeated her allegations against Lipscomb. The father also observed that K. L.'s underwear was on improperly. At this time, Lipscomb was still playing video games at the family's home, and K. L.'s parents called the police. K. L. was taken to the emergency room later that night, where she repeated her outcry to the examining physician, who performed a genital exam. The exam revealed no injuries to K. L.'s genital or rectal area, although the State presented medical testimony that the absence of physical injuries was not inconsistent with the victim's allegations of abuse.

A few weeks later, K. L. underwent a videotaped forensic interview. Although K. L.'s description of what transpired was somewhat different during this interview,[2] she described Lipscomb's penis as being white with dots on it. And law enforcement subsequently obtained a search warrant to photograph Lipscomb's genitalia to corroborate this description. Lipscomb was thereafter indicted on one count of aggravated sodomy,[3] two counts of aggravated sexual battery,[4] and one count of child molestation.[5] At trial, the jury found Lipscomb guilty on the count of child molestation but acquitted him as to all other counts. This appeal follows.

---

[2] K. L. repeated her allegation that Lipscomb inserted a finger in her vagina but also alleged that he inserted a finger and his penis into her butt. She did not repeat the allegation that he licked her.

[3] OCGA § 16-6-2 (a) (2) ("A person commits the offense of aggravated sodomy . . . when he or she commits sodomy with a person who is less than ten years of age.").

[4] OCGA § 16-6-22.2 (b) ("A person commits the offense of aggravated sexual battery when he or she intentionally penetrates with a foreign object the sexual organ or anus of another person without the consent of that person.").

[5] OCGA § 16-6-4 (a) (1) ("A person commits the offense of child molestation when such

At the outset, we note that on appeal of Lipscomb's criminal conviction, "we view the evidence in the light most favorable to the jury's verdict, and [Lipscomb] no longer enjoys a presumption of innocence."[6] And we neither "weigh the evidence nor assess witness credibility, which are tasks that fall within the exclusive province of the jury."[7] With these guiding principles in mind, we turn now to Lipscomb's enumerations of error.

1. Lipscomb first contends that the evidence was insufficient to sustain his conviction for child molestation. We disagree.

A person commits the offense of child molestation when he or she "does any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person . . . ."[8] And here, Lipscomb was charged with child molestation against K. L. in that he committed such an act with the intent to arouse his sexual desires by "removing the panties of [K. L.] and exposing his penis to her."

As to the removal of K. L.'s panties, Lipscomb argues that the evidence was insufficient because K. L. never alleged that they were removed and because testimony by K. L.'s parents established that she had repeatedly removed her own clothing—including her underwear—throughout the day. Once again, we disagree.

While it is certainly true that K. L.'s parents testified that she removed her own clothing during the course of the day, their testimony also indicated that K. L. was not inclined to replace her clothing without assistance or instruction. And both testified that before they left to run a quick errand, K. L.'s underwear was on properly, but it was on improperly when they returned approximately 20 minutes later. Additionally, in K. L.'s forensic interview, the video of which was shown to the jury, K. L. explained to the interviewer that her uncle removed her underwear and then replaced them. From this, the jury could infer that K. L.'s panties had been removed by Lipscomb (and hurriedly replaced), which is sufficient evidence of child molestation.[9]

person[ ] . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person . . . .").

[6] *DeLong*, 310 Ga. App. at 519-20.

[7] *Id.* at 520 (punctuation omitted).

[8] OCGA § 16-6-4 (a) (1).

[9] *See DeLong*, 310 Ga. App. at 520-21 (1) (sufficient evidence of child molestation when, *inter alia*, child was found asleep with her underwear "pulled down").

As to the exposure of his penis, Lipscomb argues that the evidence was insufficient because K. L. never claimed that he showed her his penis. Nevertheless, we also find the evidence sufficient to convict Lipscomb on this count. K. L.'s forensic-interview description of Lipscomb's penis as being white with dots was corroborated by photographic evidence, which revealed a freckle or mole on Lipscomb's genitalia. From this, the jury could determine that Lipscomb's genitalia was exposed to K. L., which is sufficient evidence of child molestation.[10] Thus, Lipscomb's conviction could be supported by the evidence that he removed K. L.'s underwear or that he exposed his penis because, in either event, the evidence was sufficient to sustain his conviction.[11]

Finally, we note that although Lipscomb testified that he did not commit the charged offense, "the jury was not required to believe [his] testimony, nor to disbelieve the [S]tate's witnesses."[12] The jury's role is "to resolve conflicts in the evidence and determine the credibility of witnesses."[13] Accordingly, under the facts of this case, there was sufficient evidence from which the jury could convict Lipscomb of child molestation.[14]

2. Next, Lipscomb contends that the trial court erred in failing to strike a juror for cause when the juror expressed bias against Lipscomb during voir dire. We disagree.

As we have previously held, "it shall be good cause of challenge that a juror has expressed an opinion as to which party ought to prevail or that he has a wish or desire as to which shall succeed."[15] And a potential juror must be excused for cause "if he or she holds an opinion so fixed and definite that he or she will be unable to set it aside and decide the case on the evidence and the court's charge on the

---

[10] *See Westbrooks v. State*, 309 Ga. App. 398, 399-401 (1) (710 SE2d 594) (2011) (sufficient evidence to sustain child molestation conviction when, despite lack of detailed testimony by victim at trial, victim's out-of-court statements describing molestation to others were admitted); *Wilkerson v. State*, 266 Ga. App. 721, 722 (1) (598 SE2d 364) (2004) (holding that "simply exposing one's sexual organs to a child can be sufficient proof" of child molestation).

[11] *See Cantu v. State*, 304 Ga. App. 655, 658 (2) (a) (697 SE2d 310) (2010) ("[When] conjunctive pleadings set forth more than one act by which the accused committed the crime, the evidence is sufficient so long as it shows at least one of the acts alleged. If a crime may be committed in more than one way, it is sufficient for the State to show that it was committed in any one of the separate ways listed in the indictment, even if the indictment uses the conjunctive rather than disjunctive form." (punctuation omitted)).

[12] *Brown v. State*, 295 Ga. App. 542, 544 (672 SE2d 514) (2009).

[13] *Id.*

[14] *See Obeginski v. State*, 313 Ga. App. 567, 569 (1) (722 SE2d 162) (2012) ("The child victim's testimony alone authorized [the defendant's] convictions on the crimes charged, and her statements were further corroborated by her mother [and other witnesses].").

[15] *Harper v. Barge Air Conditioning, Inc.*, 313 Ga. App. 474, 475 (1) (722 SE2d 84) (2011) (punctuation omitted); *see also* OCGA § 15-12-134.

evidence."[16] When a challenge has been made, "the trial court has a duty to hear the competent evidence respecting the challenge as shall be submitted by either party, the juror being a competent witness."[17] And when bias is shown, "the trial court must do more than rehabilitate the juror through the use of any talismanic question" because the court "is statutorily bound to conduct voir dire adequate to the situation . . . ."[18] Additionally, "trial courts have broad discretion to evaluate and rule upon a potential juror's impartiality, based upon the ordinary general rules of human experience."[19] In this regard, "a trial court may only be reversed upon a finding of manifest abuse of that discretion."[20]

In the case sub judice, Lipscomb takes issue with a potential juror who, through her responses to a number of questions asked of the panel as a whole, expressed that she had already formed an opinion as to the guilt or innocence of the defendant. The judge concluded that it would be appropriate to conduct individual voir dire of this juror (along with a number of other jurors). When questioned one-on-one by the trial judge as to why she had so answered the questions, the juror responded,

> Well, I have two young girls and I have a friend whose nephew was assaulted sexually in a bathroom at a swimming pool. . . . And so just naturally, you know, I feel like if [the defendant's] here, [the State] must have a lot of evidence against him and it's just hard to think about it having small children.

Thereafter, the judge questioned the juror as to whether she could "wait until the evidence actually begins at trial before . . . [making] a decision about guilt or innocence," to which the juror responded that she could. The juror also said that she did not have "a definite opinion" and that she had not formed an opinion "a hundred percent." And although she indicated that she had *some* opinion as to guilt or innocence, when further questioned by the judge, the juror

---

[16] *Wood v. B & S Enters., Inc.*, 314 Ga. App. 128, 133 (4) (723 SE2d 443) (2012) (punctuation omitted).

[17] *Harper*, 313 Ga. App. at 475 (1) (punctuation omitted).

[18] *Bennett v. Mullally*, 263 Ga. App. 215, 217-18 (1) (587 SE2d 385) (2003) (physical precedent only) (punctuation omitted).

[19] *Wood*, 314 Ga. App. at 133 (4) (punctuation omitted).

[20] *Id.* (punctuation omitted); *see also Harper*, 313 Ga. App. at 476 (1) ("[B]ecause trial courts are vested with broad discretion in evaluating and ruling upon a potential juror's impartiality, we will only reverse when there has been a 'manifest abuse' of the trial court's discretion.").

said that she could keep an open mind until actually hearing evidence, that she understood that the indictment against Lipscomb was not evidence, that she could be fair to both sides, and that she accepted the constitutional principle that Lipscomb was presumed innocent until proven guilty. She then, in response to additional questions by the court, described what had happened to her friend's nephew, and her education and work experience. Finally, she again answered that she could base her decision on the evidence presented and be fair to both sides.

When Lipscomb thereafter moved to strike the juror for cause, the trial court denied the motion based on the juror's responses. Lipscomb later used a peremptory strike against the juror, and he now appeals the trial court's denial of his motion to strike for cause. But based on the extensive questioning by the trial court and the juror's detailed responses to those questions, we find no manifest abuse of discretion in the trial court's decision to deny Lipscomb's motion to strike for cause.[21]

3. Finally, Lipscomb argues that the trial court improperly denied a motion for mistrial after the State made improper statements to the jury during closing arguments. We disagree.

It is well settled that the State has a very wide permissible range in closing argument.[22] And when a trial judge passes upon a motion for mistrial based upon an allegation that argument was improper, the judge "is vested with a broad and sound discretion, and his ruling will not be controlled by this Court unless manifestly abused."[23] Here, we find no manifest abuse of discretion by the trial judge.

In the case sub judice, Lipscomb contends that the State engaged in four instances of burden-shifting during closing arguments. Specifically, he refers to three instances in which the State questioned why Lipscomb did not present a medical expert to testify that bruising and trauma would have been present if K. L.'s allegations were true. The other instance surrounds the State's question of why Lipscomb, when he testified, did not use one of the trial exhibits—a photograph of K. L.'s room—to identify a toy that was central to his defense, namely that on the night in question, he only briefly visited

---

[21] *See Hardy v. Tanner Med. Ctr., Inc.*, 231 Ga. App. 254, 256 (4) (499 SE2d 121) (1998) (trial court did not abuse its discretion by denying motion to strike juror when juror's answers to questions gave assurance that juror could be fair to both sides and listen to the evidence). *Compare Harper*, 313 Ga. App. at 478 (1) (holding that trial court abused its discretion in failing to make a proper inquiry of jurors and/or failing to strike jurors for cause after jurors explicitly expressed bias).

[22] *See, e.g., Crusselle v. State*, 303 Ga. App. 879, 884 (3) (694 SE2d 707) (2010) ("It is well settled that the permissible range of the state's closing argument is very wide.").

[23] *Id.* (punctuation omitted).

K. L.'s room after he heard her whining, and moved a toy she was playing with so that she would go to sleep. He contends that each statement equated to burden-shifting and that the latter statement was also a comment upon his right to remain silent.

But our Supreme Court has held that "[a] prosecutor may argue that the defendant has not rebutted or explained the State's evidence."[24] And here, the State's closing argument did this by addressing the defendant's contention during his own closing argument that K. L. would have sustained injuries if she had been molested—a claim which contradicted the testimony of the examining physician.[25] Moreover, the trial court sustained Lipscomb's objections to these remarks and repeatedly instructed the jury that the burden of proof was upon the State and that the burden never shifts to the defendant.[26]

Additionally, with regard to the State's question as to why Lipscomb did not point out the above-referenced toy when a picture of K. L.'s room was on display during his testimony, "[t]here is no error in permitting the State's attorney to comment on the absence of corroborating evidence in closing argument."[27] In his trial testimony, Lipscomb admitted that he informed one officer that he removed the toy from K. L.'s hands, but he also testified to never showing the toy to police and never mentioning it to family. Thus, the State was not commenting upon Lipscomb's failure to testify but instead attacked Lipscomb's defense that he entered K. L.'s room and removed a toy from her hands to help her sleep.[28]

Accordingly, for all the foregoing reasons, we affirm Lipscomb's conviction.

*Judgment affirmed. Ellington, C. J., concurs. Phipps, P. J., concurs fully as to Division 1 and in judgment only as to Divisions 2 and 3.*

---

[24] *Arrington v. State*, 286 Ga. 335, 346 (16) (c) (687 SE2d 438) (2009).

[25] The examining physician testified it is not unusual to observe a lack of injuries when oral sodomy and digital penetration are alleged.

[26] *See Arrington*, 286 Ga. at 346 (16) (c) (holding that defendant's claim that State engaged in burden-shifting was without merit when State argued that defendant had not rebutted evidence and trial court instructed jury as to burden of proof).

[27] *Pearson v. State*, 277 Ga. 813, 815 (3) (596 SE2d 582) (2004) (punctuation omitted).

[28] *Id.* (holding that State did not comment upon defendant's failure to testify when it questioned during closing arguments why defendant never gave police the murder weapon because the comment "was a valid attack on the credibility of [the defendant's] claim that the homicide was justified"); *see also Arrington*, 286 Ga. at 346 (16) (c) ("A prosecutor may argue that the defendant has not rebutted or explained the State's evidence.").

DECIDED APRIL 9, 2012.

*Teresa L. Smith*, for appellant.
*Robert D. James, Jr., District Attorney, Deborah D. Wellborn, Assistant District Attorney*, for appellee.