**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**September 3, 2020**

# In the Court of Appeals of Georgia

A20A0968. THOMAS v. MEZIERE et al.                    DO-034

DOYLE, Presiding Judge.

In this medical malpractice case, plaintiff Arianna Thomas, as mother of deceased infant Kyler Thomas, brought a wrongful death action against defendants Dr. Tanya Meziere, Dr. Letitia Royster, and MYOBGYN, P.C. Thomas now appeals from a jury verdict in favor of the defendants , contending that the trial court erred by (1) refusing to strike for cause a married couple from the jury, and (2) excluding from evidence an illustration Thomas attempted to use during cross-examination of an expert witness for the defense. Finding no error, we affirm.

The relevant record is undisputed. In June 2014, Thomas was admitted to the hospital to induce delivery of her baby. Meziere ordered fetal monitoring, and the next day a certain pattern alleged to be sinusoidal was observed on the heart rate

monitor. Ultimately, doctors delivered the baby by cesarean section, but the baby exhibited poor health at delivery and died one day later.

Thomas brought a wrongful death action against the defendants alleging that they breached the standard of care by failing to respond appropriately to signs of fetal distress, including the readout from a fetal heart rate monitor. The case went to trial, and during voir dire of the jury panel, it became clear that two members of the panel were a married couple. Additional voir dire was conducted, and both parties and the court asked questions of the two married jurors about their independence and impartiality. Thomas moved to strike the married couple for cause, arguing that their independence was compromised by the fact that they were married. Based on their answers during voir dire, the trial court denied Thomas's motion to strike for cause. Thomas ultimately used one of her peremptory strikes to strike the wife, and the husband was seated on the jury.[1]

The trial ensued and during trial, Thomas attempted to introduce a diagram ("Figure 18-13" found on Plaintiff's Exhibits 8 and 9 ) from a medical treatise to

---

[1] During voir dire, the wife indicated a generalized disapproval of large jury verdicts.

cross-examine an expert witness called by the defense. The defendants objected, and the trial court sustained the objection and excluded the exhibit.

Thomas now appeals, challenging the trial court's failure to strike the married jurors for cause and failure to admit the diagram from the treatise.

1. Thomas contends that the trial court erred by denying her motion to strike both the husband and wife from the jury, forcing her to use one of her peremptory strikes to strike the wife in order to avoid having a husband and wife "team." We discern no abuse of discretion.

> Georgia law presumes that potential jurors are impartial, and the burden of proving partiality lies with the party seeking to have the juror disqualified. . . [A] potential juror must be excused for cause if he or she holds an opinion so fixed and definite that he or she will be unable to set it aside and decide the case based on the evidence and the court's charge on the evidence. Furthermore, trial courts have broad discretion to evaluate and rule upon a potential juror's impartiality, based upon the ordinary general rules of human experience. In fact, a trial court may only be reversed upon a finding of manifest abuse of that discretion.[2]

[2] (Footnotes and punctuation omitted.) *Wood v. B&S Enterprises*, 314 Ga. App. 128, 133 (4) (723 SE2d 443) (2012).

Pretermitting whether Thomas has shown sufficient harm under the facts of this case,[3] the record shows that counsel for both parties as well as the trial court engaged in a thorough colloquy with both prospective jurors during voir dire, specifically addressing the process for resolving disputes between them. The examination was not a mere "rehabilitation of the jurors through 'talismanic' questions,"[4] and was instead focused on determining any lack of independence based on their marital dynamic. When questioned, both the husband and the wife stated that they could be fair and evaluate the case based on the evidence presented. Neither demonstrated a fixed opinion regarding the parties or the issues in the case stemming from their marital status (notwithstanding the wife's comments about excessive jury verdicts). At one

---

[3] See *Willis v. State*, 304 Ga. 686, 708 (12) (820 SE2d 640) (2018) ("[T]he trial court's erroneous failure to excuse a prospective juror for cause, as shown by that juror's voir dire responses, cannot serve as the basis for reversal on appeal unless that juror served on the defendant's twelve-person jury."), overruling *Stolte v. Fagan*, 291 Ga. 477, 478-479 (1) (731 SE2d 653) (2012) ("[L]itigants — criminal and civil — are entitled to the removal of unqualified jurors before they begin exercising their peremptory strikes.") (emphasis omitted). See also *Golden Isles Cruise Lines, Inc. v. Lowie*, 350 Ga. App. 1, 11 n. 7 (827 SE2d 703) (2019) ("'a defendant is not presumptively harmed by a trial court's erroneous failure to excuse a prospective juror for cause simply because the defendant subsequently elected to remove that juror through the use of a peremptory strike'").

[4] *Harper v. Barge Air Conditioning, Inc.*, 313 Ga. App. 474, 478 (1) (722 SE2d 84) (2011).

point, one of the prospective jurors[5] explained, "I think we will both, you know, make our adult decision in the room based on what's presented. And if it means we're in opposite positions, we just are." Following up on this, defense counsel asked if either prospective juror would change his or her mind "because your spouse felt differently about it," and each one replied that he or she would not.

There is no evidence, nor any assertion by Thomas, that either of the prospective jurors was unqualified due to their relationship to the parties[6] or an interest in the outcome.[7] The record developed during voir dire shows that each juror was questioned alone and together as to whether he or she could decide the case on the merits of the evidence presented. Neither juror revealed an inability to decide the case on that basis or come to his or her own decision. Based on this, we discern no

---

[5] The transcript does not make it clear whether it was the husband or the wife.

[6] OCGA § 15-12-135 (a) governs the relationship between a potential juror and a party: "All trial jurors in the courts of this state shall be disqualified to act or serve in any case or matter when such jurors are related by consanguinity or affinity to any party interested in the result of the case or matter within the third degree as computed according to the civil law. Relationship more remote shall not be a disqualification."

[7] Compare *Harper*, 313 Ga. App. at 475 (1) ("[I]t shall be good cause of challenge that a juror has expressed an opinion as to which party ought to prevail or that he has a wish or desire as to which shall succeed.").

abuse of discretion by the trial court in denying Thomas's motion to strike the jurors for cause.[8]

2. Thomas also challenges the trial court's refusal to admit a diagram from a medical treatise for the purpose of cross-examining a defense expert. We review the admission of evidence for an abuse of discretion,[9] and we discern no such abuse here.

During Thomas's cross-examination of Dr. Richard Zane, an expert witness called by the defense, Thomas tendered Plaintiff's Exhibits 8 and 9, each of which included Figure 18-13 from the medical treatise *Williams on Obstetrics*. On Exhibit 8, Figure 18-13 is labeled "Sinusoidal fetal heart rate pattern." It had been established by expert testimony that a sinusoidal pattern was a rare incident indicating the need for immediate intervention and/or delivery of the baby. Thomas intended to use the diagram to strengthen her argument that medical staff failed to meet the standard of care based on the fetal heart rate monitoring.

---

[8] See *Wood*, 314 Ga. App. at 135 (4) (holding that the trial court did not abuse its discretion by denying a motion to strike because the juror stated that he could follow the law despite his personal dislike of the legal principle at issue).

[9] See *Rivers v. K-Mart Corp.*, 329 Ga. App. 495, 496 (1) (765 SE2d 671) (2014).

As Thomas laid the foundation for the exhibits, Dr. Zane explained that the exhibit containing Figure 18-13 was inaccurate and misleading, in his view, because the label shown in the exhibit, "sinusoidal pattern," was incomplete without further context provided in the *Williams* treatise. Dr. Zane pointed out that, as described in *Williams*, Figure 18-13 was not a true sinusoidal pattern, but instead was a pseudo-sinusoidal pattern reflecting an "insignificant pattern related to medications" taken by or administered to the mother. Dr. Zane identified a different figure in the treatise, Figure 18-10, as depicting a true sinusoidal pattern; that figure was not in the exhibits proffered by Thomas. Thus, Dr. Zane disputed that Figure 18-13 as depicted in the exhibits was labeled accurately. The trial court ruled that Exhibits 8 and 9 (containing Figure 18-13) were inadmissible due to a lack of proper foundation.

Thomas intended to use Figure 18-13 as an example of a sinusoidal fetal heart rate pattern to cross-examine Dr. Zane and sought admission of the exhibits under OCGA § 24-8-803 (18) ("Rule 803"), which states:

> The following shall not be excluded by the hearsay rule, even though the declarant is available as a witness: . . . To the extent called to the attention of an expert witness upon cross-examination, statements contained in published treatises, periodicals, or pamphlets . . . on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness, by other

expert testimony, or by judicial notice. If admitted, the statements may be used for cross-examination of an expert witness and read into evidence but shall not be received as exhibits. . . .

Based on this, Thomas argues that the exhibits met all of the above elements and that the trial court erred by refusing to admit the exhibits for purpose of cross-examining Dr. Zane.

Assuming without deciding that Thomas's intended use of the exhibits fell within the procedure outlined in Rule 803, that rule applies to "statements contained in published treatises . . . on a subject of history, medicine, or other science or art, established as a reliable authority."[10] Here, Dr. Zane disputed that the exhibits at issue accurately represented a statement in a treatise established as reliable. Even assuming that the *Williams* treatise is a reliable medical authority, according to Dr. Zane, the exhibits proffered by Thomas did not accurately reflect the statements in the treatise regarding the shape of a clinically significant sinusoidal fetal heart rate pattern. As discussed above, Dr. Zane pointed out that the *Williams* treatise explained that the pattern depicted in Figure 18-13 was actually not a pure sinusoidal pattern, as the label in the exhibits implied; rather, the figure in the exhibits was an example of a

---

[10] OCGA § 24-8-803 (18).

8

pseudo-sinusoidal pattern which was offered as a distinction in the treatise to more fully illustrate the medical point. According to Dr. Zane's testimony, the exhibits lacked sufficient context and mischaracterized Figure 18-13.

Based on this record, Dr. Zane's testimony authorized the trial court to find that the exhibits as labeled were misleading without the additional context found in *Williams*. In light of this unique scenario, the trial court was authorized to exercise its discretion to exclude the exhibits.[11] Accordingly, this enumeration presents no basis for reversal.

*Judgment affirmed. McFadden, C. J., and Hodges, J., concur.*

---

[11] Cf. *Moore v. WellStar Health System, Inc.*, 349 Ga. App. 834, 845 (5) (824 SE2d 787) (2019) (admission of evidence that did not meet the scope of Rule 803 (18) was harmful).